ELIZABETH J. SHAW

v.

THE CHICAGO SASH, DOOR AND BLIND MANUFACTURING COMPANY.

*Filed at Ottawa, March 31, 1893.*

1. MECHANIC'S LIEN — *statute construed — sworn statement by con_tractor.* There is nothing in section 35 of the Lien law, as amended in 1887, which makes it the duty of the owner of a building to require of the contractor the sworn statements therein provided for. But it is made the duty of the contractor, whenever any payment of money becomes due to him, to furnish such statement to the owner, and takes from him the right of action or to a lien against the owner until the statement is made, and it finally, for the protection of the owner, authorizes him, at any time during the progress of the work, to demand such statement of the contractor, and imposes a penalty upon the latter for a failure to furnish it.

2. Section 35, as amended, provides that any payment made by the owner before any such statement is made, or without retaining sufficient money, if that amount is due or to become due, to pay the sub-contractors, etc., as *shown by the statement*, shall be considered as illegal and made in violation of the rights of the persons intended to be benefited by the act, and the rights of such sub-contractors, etc., to a lien shall not be affected thereby. Under this clause, when no statement under oath is made by the contractor, payment by the owner is not made illegal so as to give a lien to sub-contractors, etc., who may thereafter give notice of their claims.

3. By section 35 sub-contractors and material-men are given a lien from the time the statement of the contractor is served upon the owner, without being required to give the notice provided by section 30, and all moneys due or to become due to the original contractor are stayed in the owner's hands for their benefit, but no such advantages are given to sub-contractors or material-men in the absence of a statement by the original contractor, or when their names do not appear on the statement when made.

4. The words "the persons intended to be benefited by this act," as used in section 35, should be construed as referring only to such sub-contractors and material-men as are named in the original contractor's statement to the owner, and of whose claims the owner shall thereby be notified, and, consequently, no other sub-contractor or material-man can claim any rights under that section.

5. SAME — *duties and liabilities of the owner — rights of sub-con-tractors — notice to owner.* Where the contractor, employed to build a

house, failed to give the owner a sworn statement of the claims of sub-contractors and material-men, as required in section 35, as amended in 1887, and there was nothing due from the owner at the time he was served with notice of the claim of a sub-contractor under section 33, the latter will have no lien on the building.

6.  Section 35 merely requires the owner to retain in his hands sufficient money to pay the sub-contractors and material-men, " as shown by the statement," and provides that payments made by him, whether before or after the statement is made, shall be deemed illegal and in violation of the rights of such sub-contractors or material-men, and not affecting their right to a lien.  The rights of sub-contractors or material-men, notice of whose claims is not brought home to the owner by the contractor's statement, can not be affected by the payment of money by the owner to the contractor.  Until the service of notice under section 30 they will have no lien, either perfected or incipient and they will, therefore, have no right to the money in the hands of the owner, which may be violated by its payment to the original contractor.

7.  Sub-contractors and material-men whose names do not appear on the sworn statement delivered by the original contractor must proceed under section 30 of the act as amended, and there is nothing in section 35 showing an intention to modify, as to them, the provision of section 33, giving them a lien only for so much as the owner may be indebted to the contractor at the time of the service of notice, or may afterwards become indebted to him.

8.  SAME — *statute strictly construed.*  The statute in relation to mechanics' liens, being in derogation of common right, should be strictly construed.  It should not be enlarged by implication or by uncertain construction, but should be given only such force as clearly belongs to it.  To say that a right claimed under such a statute is doubtful is, substantially, tantamount to saying that it does not exist.

APPEAL from the Appellate Court for the Second District; — heard in that court on writ of error to the Circuit Court of Kankakee county; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. SHERWOOD DIXON, for the appellant:

Under the statutes of the State relating to mechanics' liens, in order that a sub-contractor may acquire a lien, he must serve a notice upon the owner before the latter has paid the original contractor in full, or he must have been named, together with the nature and amount due or to become due him, in the affi-

davit which the statute allows the owner to exact from the original contractor.    2 Starr & Curtis' Statute, 1529 ; Hurd's Statutes of 1891, p. 913.

Subsequent to the amendments of the law respecting mechanics' liens, which were adopted in 1887, the Supreme Court so construed the law.    *Butler et al.* v. *Gain et al.*, 128 Ill. 23.

Their right to a lien does not depend upon the omission of the owner to do or perform any act, but does depend upon something they must themselves do.    Id. 28.

Section 33 of the act above cited, was not expressly repealed by the amendments adopted in 1887.    Laws 1887, page 221.

It can not be held that section 33 was repealed by implication.

Before a court will pronounce an act repealed by implication, the later act must be irreconcilably inconsistent with the earlier one.    *Gunnarssohn* v. *City of Sterling*, 92 Ill. 569 ; *Covington* v. *East St. Louis*, 78 id. 552.

Repeals by implication are not favored.    *Wragg* v. *Penn Tp.*, 94 Ill. 13.

Repeal by implication only takes place when the provisions of the two acts are repugnant ; if a construction can be given by which both may stand, it will be adopted. *Chicago* v. *Quimby*, 38 Ill. 274.

The repugnance must be such that the two acts can not be reconciled.    *Hume* v. *Gossett*, 43 Ill. 297.

Payments made by the owner of the building, of just debts on the orders of the contractor, in favor of sub-contractors, accepted verbally before notice of lien of another sub-contractor is served on the owner, are good, though the payments are made after the service of the notice.    *St. Louis N. S. Yards* v. *O'Reilly*, 85 Ill. 546.

If before any liens were filed the contractor had been paid in full or had assigned his interest in the fund in good faith and for a valuable consideration, in payment of a claim of a

sub-contractor, and the owner is notified thereof, no subsequent liens could operate to affect the owner with any further liability. After notice of an order of that kind the owner is bound to apply the fund to its payment and to no other purpose. *Lauer et al.* v. *Dunn*, 115 N. Y. 405 ; *Carman* v. *McInrow*, 13 id. 70.

Mr. RUDOLPH D. HUSZAGH, for the appellee :

The amendments to the lien statute in 1887 are remedial and as such should receive a liberal construction to advance the remedy. *Jackson* v. *Warren*, 32 Ill. 331 ; *Hadley* v. *Morrison*, 39 id. 393.

That it is the duty of a sub-contractor to furnish a notice to the owner of his right to a lien, providing the original contractor fails by a statement to do so, is not denied.

In this case appellee did serve its notice in the form and at the time pointed out by sections 30 and 31, and appellee claims that by doing so, it became entitled to the benefits of section 35.

The law did not require appellee to give any notice whatever of its rights, until within forty days from the completion of its sub-contract, and having been served within that period, was in proper time. A notice before or after such period, would have been useless, if relied upon in this action.

But two methods are designated by which the rights of sub-contractors, material-men, etc., are to be brought to the notice of the owner. One is shown by section 30, the actual notice of the sub-contractor, and the other by section 35, the notice acquired indirectly through the statement of the original contractor.

Undoubtedly, there are various other ways in which an owner can keep himself informed, but it is claimed by appellee that one or the other of the notices mentioned by these two sections, is the kind that appellant had a right to rely and insist upon, because by either notice only could appellee enforce its lien. *Butler & McCracken* v. *Gain*, 128 Ill. 23.

Section 35 gave appellant a right to insist upon a sworn statement from Schmidt, which would have given her a complete report of his sub-contracts with others connected with her building, including the sub-contract of appellee, together with the nature and amount thereof. And a failure on his part so to do, would have deprived him from recovering any part of his contract, making his account as far as he was concerned not actionable, and subjecting him to an additional penalty, provided for by said section.

True, section 31 limits the lien of a sub-contractor to the indebtedness of the owner to the original contractor at time of giving notice. But section 29, to which it refers, expressly intimates that the owner will be obliged to pay a greater sum than the price stipulated, if he or she make payments to the original contractor or to his order, in violation of the rights of persons intended to be benefited by section 35 ; and said section declares that payments, made without requiring the statement therein mentioned, shall be considered illegal, and shall not affect the lien of sub-contractors intended to be benefited ; that is, such as have been mentioned in statements already furnished by the original contractor, or those who have given, or who may give the notice required by section 30, in apt time. Such illegal payments, therefore, can not be taken into account by the owner, and to the extent of such illegal payments, the owner is still indebted to the original contractor, for the purpose of satisfying the lien of the sub-contractor who brought himself within the provision of the law.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court :

This was a proceeding brought by the Chicago Sash, Door and Blind Manufacturing Company against Elizabeth J. Shaw, for the establishment and foreclosure of a sub-contractor's lien. The facts, about which there is very little if any controversy, are, in substance, as follows: On the 15th day of May, 1889,

the defendant, being the owner of two lots in the city of Dixon, entered into a contract with William C. Schmidt for the construction of a dwelling-house thereon. By the terms of the contract, Schmidt was to furnish the labor and materials, and to erect, complete and deliver the dwelling house to the defendant on or before September 1, 1889, and was to receive therefor the sum of $4750, payable in monthly installments as the work should progress, the residue to be paid within thirty days after the completion of the work.

About July 6, 1889, Schmidt entered into a contract with the petitioner, by which the petitioner agreed to furnish the sash, doors and certain other mill-work to be used in the construction of the building, for the sum of $675. Under this contract, the petitioner commenced furnishing materials August 23, 1889, and finished delivering the same October 8, 1889, and also furnished certain extra materials and labor, amounting to $76.20, the last item being furnished October 15, 1889, making in all $751.20, the sum for which a lien is now sought to be established.

Under date of August 14, 1889, the petitioner wrote to the defendant's agent as follows:

"Mr. W. C. Schmidt, the carpenter building your house, has ordered of us the mill-work for same, the amount of his contract being $675, barring extras. This is the first work we do for Mr. S., and as we are unable to get reliable information as to his financial standing, we inform you of his liability for account of your building. Please inform us whether you will see our bill paid when job is completed."

To this the agent replied, under date of August 16, 1889:

"Your favor of the 14th inst. at hand. I can not agree to do anything in reference to the contract of W. C. Schmidt for building the house of Elizabeth J. Shaw. I will state, however, that she will doubtless keep her agreement with him, and she probably will also see that there are no unpaid liens of sub-contractors under the mechanics' lien statute. Hoping

that there will be no difficulty in your carrying out your sub-contract, I remain," etc.

During the time the work was in progress, Schmidt made out and delivered to the defendant two sworn statements, as required by section 35 of the Mechanics' Lien Law, showing the various amounts due or to become due for labor or materials, the first of these statements being rendered July 6, 1889, and showing various claims unpaid, aggregating $300.01, and the second being rendered August 3, 1889, showing unpaid claims aggregating $1,190.02. No further statements seem to have been rendered by Schmidt to the defendant, but the defendant paid, from time to time, to laborers and material-men, on Schmidt's orders, various sums of money, which, together with some small sums paid directly to Schmidt and certain orders of Schmidt in favor of laborers and material-men, which she had accepted, amounted to the entire contract price for the erection of the house. These payments had all been made and orders accepted before October 23, 1889, the date of the service by the petitioner upon the defendant of the notice prescribed by section 30 of the Mechanics' Lien Law. On that day notice was served, and it is not disputed that the petitioner took all subsequent steps prescribed by the statute to perfect his lien. One other sub-contractor, to whom $135.16 was due, also served notice, and his claim has been paid in full.

Upon these facts the Circuit Court held that the petitioner was not entitled to a lien, and entered a decree dismissing the petition at its costs for want of equity. On appeal to the Appellate Court that decree was reversed, and the cause was remanded to the Circuit Court with directions to enter a decree in favor of the petitioner. The defendant, by a further appeal, now brings the record to this court for review.

The right of the petitioner to a lien must depend upon the construction to be placed upon the Mechanics' Lien Law of 1874, as amended by the act of March 25, 1887, that being

the law in force at the time the rights of the parties to this suit accrued.    It is claimed on the part of the petitioner that, as a large portion of the payments made by the defendant were made without requiring of the contractor a statement under oath, giving the names of the sub-contractors and persons furnishing materials, and the terms of the contracts with them, and the amounts due or to become due to them respectively, such payments were made in violation of the rights of the petitioners and other sub-contractors, and that the defendant is therefore not entitled to credit for such payments, in determining whether she was indebted to the original contractor, at the time the notice of the petitioner's lien was served upon her.    The defendant, on the other hand, insists that the statute, when properly construed, leads to no such result, and that she is entitled to all payments made prior to the service of notice of the petitioner's lien, and as nothing was then due from her to the principal contractor, there is nothing upon which the lien can operate.

The portions of the statute which it will be necessary for us to consider are sections 29, 30, 33 and 35.    Section 29, which is one of the sections amended by the act of 1887, provides that, every sub-contractor, etc., who shall, in pursuance of the purpose of the original contract between the owner of any lot or piece of ground and the original contractor, perform any labor or furnish any materials in building any house or other building on such lot, shall have a lien for the value of such labor and materials, upon the lot, to the extent of the right, title and interest of the owner, at the time the original contract was made.    " But the aggregate of all the liens hereby authorized shall not exceed the price stipulated in the original contract between such owner and the original contractor for such improvements.    In no case shall the owner be compelled to pay a greater sum for or on account of such house, building or other improvement, than the price or sum stipulated in said original contract or agreement, unless payments be made to

the original contractor, or to his order, in violation of the rights and interests of the persons intended to be benefited by section 35 of this act."

Section 33, which was not amended by the act of 1887 but remains as originally enacted, provides that no claim of a sub-contractor shall be a lien, except so far as the owner may be indebted to the contractor at the time of giving notice of the lien, or may afterwards become indebted to the contractor. Section 30, which was amended, prescribes the form of the notice, and provides that such notice shall not be necessary, where the sworn statement of the contractor provided for by section 35 shall serve to give the owner notice of the amount due and to whom due. Section 35 as amended is as follows:

" The original contractor shall, whenever any payment of money shall become due from the owner, or whenever he desires to draw any money from the owner, lessee or his agent on such contract, make out and give to the owner, lessee or his agent, a statement, under oath, of the number, name of every sub-contractor, mechanics or workmen in his employ, or person furnishing materials, giving their names and the rate of wages or the terms of contract, and how much, if anything, is due or to become due to them or any of them for work done or materials furnished, and the owner, lessee or his agent shall retain out of any money then due or to become due to the contractor, an amount sufficient to pay all demands that are due or to become due such sub-contractors, mechanics and workmen or person furnishing materials, as shown by the contractor's statement, and pay the same to them, according to their respective rights, and all payments so made shall, as between such owner and contractor, be considered the same as if paid to such original contractor.   Until the statement provided for in this section is made in manner and form as herein provided, the contractor shall have no right of action or lien against the owner on account of such contract, and any payment made by the owner before such statement is made or

without retaining sufficient money, if that amount be due or is to become due, to pay the sub-contractors, mechanics, workmen or persons furnishing materials, as shown by the statement, shall be considered illegal, and made in violation of the rights of the persons intended to be benefited by this act, and the rights of such sub-contractors, mechanics, workmen or persons furnishing materials, to a lien shall not be affected thereby. In order that the owner, lessee or his agent may be protected, he may, at any time during the progress of the work, demand in writing of the contractor the statement herein provided for, which shall be made by the contractor and given to the owner, lessee or his agent, and if such contractor fail to furnish such statement within five days after demand made, he shall forfeit to such owner the sum of $50 for every such offense, which shall be recovered in any action of debt before any justice of the peace."

It will readily be seen that the language of section 35 is not altogether clear and free from difficulty, but we are of the opinion that when carefully scrutinized, it will be found that it does not bear the construction which the petitioner is seeking to put upon it. In the first place, there is nothing in its provisions which make it the legal duty of the owner to require of the contractor the statements provided for. But it is made the duty of the contractor, whenever any payment of money becomes due to him, to furnish such statement to the owner, and the section takes from him the right of action or to a lien against the owner until the statement is made, and it finally, for the protection of the owner, authorizes him, at any time during the progress of the work, to demand such statement of the contractor, and imposes a penalty upon the latter for a failure to furnish it.

The petitioner relies in support of his contention upon this clause of the section: "And any payment made by the owner before such statement is made, or without retaining sufficient money, if that amount is due or to become due, to pay the sub-

contractors, mechanics, workmen or persons furnishing materials, *as shown by the statement*, shall be considered illegal, and made in violation of the rights of the persons intended to be benefited by this act, and the rights of *such* sub-contractors, mechanics, workmen or persons furnishing material to a lien shall not be affected thereby." The construction sought to be put upon this clause is, that where no statement under oath is made by the contractor, every payment by the owner is illegal, and is no bar to any sub-contractor or material-man who may thereafter give notice and seek to establish his lien. Such construction we think is unwarranted.

In seeking to determine the force properly belonging to this clause, we should keep in view the rule so frequently enunciated by this court, that the statute in relation to mechanic's liens, being in derogation of common right, should be strictly construed. A statute which gives to a particular class of creditors special and exceptional rights and remedies, and which derogates from the common law right which every man has to enter into such lawful contracts as he pleases, and to perform his contracts when made according to their terms, should not be enlarged by implication, or by uncertain construction, but should be given only such force as clearly belongs to it. To say that a right claimed under such statute is uncertain, is substantially tantamount to saying that it does not exist.

The first and perhaps the determining question here is, as to the parties referred to by the words, " the persons intended to be benefited by this act." Whoever they are, they are manifestly the parties referred to and provided for by section 35. In section 29, the same parties are designated as " the persons intended to be benefited by section 35 of this act." But in section 35, we find nothing, except it be by a remote and uncertain inference, indicating an intention to make any provision in favor of any sub-contractors or material-men, except such as are shown by the sworn statement of the original contractor. They are given a lien from the time the statement is served,

without being required to give the notice provided for by section 30, and all moneys due or to become due to the original contractor are stayed in the owner's hands for their benefit. But no such advantages are given to sub-contractors or material-men in the absence of a statement by the original contractor, or where their names do not appear on the statement when made. They must proceed under section 30, and there is nothing in section 35 evidencing an intention to modify as to them the provision of section 33 giving them a lien only for so much as the owner may be indebted to the contractor at the time of the service of notice or may afterwards become indebted to him. Section 35 merely requires the owner to retain in his hands sufficient money to pay the sub-contractors and material-men " as shown by the statement," and provides that payments made by him, whether before or after the statement is made, shall be deemed illegal and in violation of the rights of such sub-contractors and material-men, and not affecting their right to a lien. It is difficult to see how, in any proper legal sense, the rights or interests of sub-contractors or material-men, notice of whose claims was not brought home to the owner by the contractor's statement, could be affected by the payment of money by the owner to the contractor. Until service of notice under section 30, they would have no lien, either perfected or incipient, and they would therefore have no right to the money in the hands of the owner which would be violated by its payment to the original contractor.

We are of the opinion then that the words, " the persons intended to be benefited by this act," as used in section 35, should be construed as referring only to such sub-contractors and material-men as should be named in the original contractor's statement to the owner, and of whose claims the owner should thereby be notified, and consequently that no other sub-contractors or material-men can claim any rights under that section. It follows that the petitioner's right to a lien can not be founded upon the provisions of that section, but must rest solely upon

the provisions of sections 30 and 33, and as the defendant, at the time of the service by the petitioner of notice of his lien, was not indebted to the original contractor in any sum, and did not thereafter become indebted to him, there was nothing upon which the petitioner's lien could operate.

Substantially the same view as to the force to be given to section 35 we have here expressed was taken in *Butler* v. *Gain,* 128 Ill., 23. We there held that a payment to the original contractor is in violation of the rights and interests of the subcontractor or person furnishing materials, when the owner has notice of such person's rights, either under section 30, or from the sworn statement of the original contractor provided by section 35.

We are of the opinion therefore that the petitioner has failed to establish any right to a lien as against the defendant, and that his petition should be dismissed for want of equity. The judgment of the Appellate Court will be reversed, and the decree of the Circuit Court will be affirmed.

*Judgment reversed.*