KEELEY BREWING COMPANY

*v.*

NEUBAUER DECORATING COMPANY *et al.*

*Opinion filed February 21, 1902.*

1. MECHANICS' LIENS—*when notice by sub-contractor to owner is unnecessary.* Under the last clause of section 25 of the Mechanic's Lien law, (Laws of 1895, p. 236,) a notice from a sub-contractor to the owner, of the amount of his claim, is unnecessary, where the sworn statement of the contractor, made under section 5, gives to the owner true notice of the amount due and to whom payable.

2. SAME—*sub-contractor's right to lien does not depend upon existence of contractor's lien.* A sub-contractor's lien, given by section 22 of the Mechanic's Lien act, being a direct lien, does not depend upon the existence of a contractor's lien, and the waiver of a lien by the contractor, either in express terms or by the execution of a contract, which does not create a lien under the statute, does not affect the sub-contractor's right to a lien, if the latter brings himself within the statute by complying with its provisions.

3. SAME—*rule as to proof that material actually entered into the construction of the building.*  Under section 7 of the Mechanic's Lien law, a lien for material will not be defeated because of lack of proof that the material actually entered into the construction of the building, provided it is shown that such material was in fact delivered at the place where such building was being constructed, for the purpose of being used in such construction.

4. CONTRACTS—*when contract is sufficiently uncertain to admit proof as to who is bound.*  Where there are two contracts of the same date for improving a building, one signed "Neubauer Decorating Company, D. E. Livermore, Supt. of Contracts," and the other "D. E. Livermore, Mfg. Agt. & Supt. of Contracts," there is sufficient uncertainty upon the face of the transaction to admit parol proof as to who was intended to be bound as principal by the latter contract, and if the owner of the building has treated the Neubauer Decorating Company as principal he has the burden of proving that his position is correct.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES A. BISHOP, Judge, presiding.

M. H. GUERIN, for appellant.

ELMER H. ADAMS, for appellee Neubauer Decorating Company.

JOHN H. GEARY, for appellee Thomas F. Geary.

H. W. GLEASON, for appellee E. L. Roberts & Co.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the Keeley Brewing Company, appellant, in the circuit court of Cook county, under section 31 of the Mechanic's Lien law, against the appellees and others not interested in this appeal, averring that on April 12, 1898, it was the owner of a leasehold interest in certain premises situated in Chicago, Cook county, Illinois, known as Nos. 884 and 886 Fifty-first street; that at the last mentioned date the Neubauer Decorating Company, a corporation, through its agent

and superintendent of contracts, D. E. Livermore, made a proposition for altering, improving and decorating said premises for the sum of $3500, on two separate pieces of paper, copies of which are attached to the bill, and that it accepted said proposition; that said Neubauer company failed to perform certain parts of said work and did not finish decorating until after June 10, 1898; that it paid to the Neubauer company, on account of said contract, $2094.86; that it is entitled to an off-set of about $1000; that E. L. Roberts & Co., William H. Decker & Co., Thomas F. Geary, D. E. Livermore, and others, have or claim to have, as sub-contractors or otherwise, an equitable interest in and to be entitled under the statute to receive such sum of money as the court shall find, upon taking an accounting, to be due and owing from the appellant to said Neubauer company for work or labor performed or material furnished under said contract; that it fears there is not enough money due to said Neubauer company to pay all of said liens, and prays for an accounting, and that the amount found to be due the Neubauer company may be divided among the parties found to have liens thereon, *pro rata*, and in proportion to the amount so found to be due them, respectively. Answers and replications were filed and the Neubauer company filed a cross-bill. An order was entered that the answers of each of the defendants claiming mechanics' liens stand as cross-bills or intervening petitions, and the cause was referred to the master to take proofs and report.

The propositions of April 12, 1898, accepted by the appellant, and which were attached to the bill and marked, respectively, exhibit "A" and "B," are as follows:

"NEUBAUER DECORATING CO.,
CHICAGO, *April 12, 1898.*

"*To the Keeley Brewing Co., and John E. Emrich, Superintendent:*

"GENTLEMEN—We propose to make the following alterations and improvements to your summer garden, situated at corner of Fifty-first street and Grand boulevard, which is to be known as 'Old Heidelberg,' with such additional names as may be de-

sired, and furnish the following memorandum of furniture and gas fixtures, all complete and satisfactory, for the sum of nineteen hundred dollars ($1900):

"Twenty-five posts, 111 tables, 444 chairs, to be used in garden, each post to have gas pipe running through it, with a 'T' at top, furnished with white globes. One water fountain placed in center of garden, six inches, gravel floor, and fifteen suitable trees with bushy tops, six to eight inches in d., to be accepted by the owner before they are set. Said trees to be suitably planted and guaranteed, as is usual by dealers in trees. This garden is to be enclosed in the rear with a 16-ft. matched-and-beaded board fence with 11-ft. roof. This roof extends along east side to protect archway of cafe. West side to have 16-ft. fence close to brick building; Fifty-first street side to be constructed as shown in sketch. Music shell to be constructed in south-west corner of garden. Alterations and constructions of archways, including kitchen, lavatories and bar, to be executed as shown in sketch, with storm doors for arches and drop doors for kitchen and bar. Ten posts in cafe to be cased, and four gas jets to each post, with candle trimmings. Two gas jets to each post in archways, and a table constructed around each post in cafe. Gas in kitchen and lavatories. Present gas fixtures in bar to be taken down and re-placed with four-light fixtures acceptable to owner. New sash and chipped glass for all transoms over the windows, in bar and cafe; also skylight in cafe. Rod and drapery to serve as screens to ladies' and gentlemen's lavatories; also one cashier's desk and one ticket seller's desk. All necessary repairing of plastering and wainscoting of bar and finishing of same, also to repair all broken glass to skylight with new glass. Kitchen to have new roof, also lavatories, and to be newly plastered, new floor for kitchen, leaded and supported in a suitable manner. Ice-box in kitchen to be removed to bar and an ice-box constructed in kitchen, with suitable dimensions for holding and preserving ice. Barroom ice-box to be removed. Gas pipes to be laid and all sewer connections made.

"*Lavatories*—Ladies' to have stationary wash bowl and two closets, one entrance. Gentlemen's to have two entrances, one closet, three urinals, and to use stationary wash bowl now there.

"Front windows to have a hedge of three feet to serve as screen. Each archway to have steps leading into garden. Kitchen to have skylight. Present shades in garden to be taken down and re-placed in corner lot as owner may direct, and as

explained. Owners will give all necessary direction while alterations and improvements are in progress.

"Payments to be made as follows: Five hundred dollars ($500) to be paid when contract is one-third done; six hundred dollars ($600) when two-thirds done; eight hundred dollars ($800) when completed.

KEELEY BREWING COMPANY,

THOS. F. KEELEY, *Prest.*

Accepted:

D. E. LIVERMORE,

Mfg. Agt. & Supt. of Contracts."

"NEUBAUER DECORATING COMPANY, CHICAGO. ⎫
ADOLPH NEUBAUER, *Mgr. of Art Dept.* ⎬
D. E. LIVERMORE, *Supt. of Contracts.* ⎭
*April 12, 1898.*

"*To the Keeley Brewing Co., and John E. Emrich, Superintendent:*

"GENTLEMEN—We propose to decorate your summer garden and buildings, situated at the corner of Fifty-first street and Grand boulevard, as per designs submitted, for the sum of sixteen hundred dollars ($1600), as follows: All outside work to be done in oil; in the interior of cafe to be executed in water color; lavatories, ladies' and gentlemen's, also kitchen, to be painted in light colors in oil. The bar-rooms to be papered with ingrain paper and decorated. The office at rear of bar to be suitably papered and woodwork painted. The chip-glass windows to be placed inside of present windows over transoms in bar and cafe, as well as sky-light, to be decorated as shown in sketch. Tables and chairs now in cafe and bar to be re-finished, all new chairs and tables for the garden and posts for the gas fixtures to be painted in a harmonious color, corresponding with the decorations. This decoration includes the painting of all the woodwork in cafe and bar, complete, to the satisfaction of owners, and to have same finished on or about May 5. Six hundred dollars to be paid when half done, balance when completed. All painting to have not less than three coats.

NEUBAUER DECORATING CO.,

D. E. LIVERMORE, Supt. of Contracts."

Accepted:

KEELEY BREWING COMPANY,

THOS. F. KEELEY, *President.*"

The master found that both of said propositions were the contracts of the Neubauer Decorating Company and that Livermore acted only as the agent of the company; that the Neubauer Decorating Company had complied with its agreement; that it had received thereon $2094.86, leaving due it a balance of $1405.14; that E. L. Roberts

& Co., William H. Decker & Co. and Thomas F. Geary
had made sub-contracts with Livermore, as the agent of
the Neubauer company, to furnish labor and materials;
that they have complied with the Mechanic's Lien law;
that there is due to E. L. Roberts & Co. $780, to William
H. Decker & Co. $187.65, and to Thomas F. Geary $403.65,
and recommended that the claim of Livermore be disal-
lowed and that the cross-bill of the Neubauer Decorat-
ing Company be dismissed as to all of the defendants
except John E. Emrich. The court entered a decree con-
firming the master's report, except in the following par-
ticulars:  Exceptions were sustained to the report in
failing to find that E. L. Roberts & Co. and Thomas F.
Geary were entitled to liens and to their costs, and the
principal sum found due to William H. Decker & Co. by
the decree is $46.20 instead of $187.65, as reported by the
master.  The allowance by the decree to the lien claim-
ants, inclusive of principal, interest and cost, are as fol-
lows:  E. L. Roberts & Co. $851.90; William H. Decker
$49.20; Thomas F. Geary $442.15; total, $1343.25. Costs
to the amount of $330 were decreed against the Neubauer
company, and the decree ordered that in the event that
the Neubauer company, D. E. Livermore or the appel-
lant should not, within ten days, pay the amounts found
due, the interest of the appellant in said premises should
be sold.

The Neubauer Decorating Company prosecuted an ap-
peal to the Appellate Court for the First District, which
court held that the circuit court erred in finding and de-
creeing that the contracts of April 12, 1898, were both
the contracts of the Neubauer Decorating Company, and
in dismissing the cross-bill of that company, and in de-
creeing that money due to that company under the deco-
rating contract, viz., $1000, was wrongfully paid, and in
holding that all payments made on both contracts were
wrongfully made, and in decreeing that the Neubauer
company was liable for or should pay any of said claims,

and in decreeing the payment of costs by said Neubauer company, in respect to which matters the decree was reversed and otherwise affirmed, and the cause was remanded to the circuit court with directions to enter a decree in favor of the Neubauer Decorating Company for $1000 and interest from the date of the completion of the decorating contract, to-wit, June 5, 1898, and its costs, and in favor of E. L. Roberts & Co., William H. Decker & Co. and Thomas F. Geary for the principal amount found due to each of them by the decree, with interest from the time, respectively, when they filed their answers, and their costs; that the claim of said Neubauer Decorating Company, and the claims of E. L. Roberts & Co., William H. Decker & Co. and Thomas F. Geary be made liens on the interest of the appellant in said premises, and that the appellant pay the costs of the circuit court, except such as were decreed against parties other than the Neubauer company, and all the costs of that court,—from which decree the Keeley Brewing Company has prosecuted an appeal to this court.

The appellant contends that both contracts bearing date April 12, 1898, are the contracts of the Neubauer Decorating Company, while the Neubauer company contends that the contract signed "Neubauer Decorating Company, D. E. Livermore, Supt. of Contracts," is its only contract with the appellant, and that the contract signed "D. E. Livermore, Mfg. Agt. & Supt. of Contracts," is the contract of Livermore, and not of it, the Neubauer company. The circuit court took the view of appellant while the Appellate Court took that of the Neubauer Decorating Company. We are of the opinion the view taken by the Appellate Court is the correct one. The words "Mfg. Agt. & Supt. of Contracts," following the signature of D. E. Livermore, are mere *descriptio personœ*. (*Braun* v. *Hess & Co.* 187 Ill. 283.) There is, however, enough uncertainty upon the face of the agreement to admit parol proof of who was intended to be bound as

principal, (*Vail* v. *Northwestern Life Ins. Co.* 192 Ill. 567,) and the burden of proof was upon the appellant to show that the Neubauer Decorating Company, and not Livermore, was the principal in the contract. The appellant failed to sustain such burden of proof. In discussing the evidence bearing upon that question found in this record, the Appellate Court say:

"It was incumbent on the Keeley company to prove, by a preponderance of evidence, its claim that appellant was the principal in the Livermore contract, and the question is whether it so proved. The evidence in the case is very voluminous, and we will refer to such parts of it as is relied on by the counsel of the Keeley company as sustaining that company's contention.

"*First*—Both contracts commence with the words 'We propose.' Grammatically, these words apply to an individual as much as to a corporation, and the use of them is, we think, insignificant as to the question at issue.

"*Secondly*—In the Livermore contract the following language occurs: 'Alterations and construction of archways, including kitchen, lavatories and bar, to be executed as shown in sketch;' also the words, 'Fifty-first street side to be constructed as shown in sketch.' In respect to this language counsel say: 'Upon the sketch itself [complainant's exhibits 3, 4, 5, 6, 7, rec. 42, not shown in the abstract,] the name 'Neubauer Decorating Company' had been signed by Neubauer himself before they were presented to Mr. Keeley, and that signature was there when the propositions were signed; thus, the sketches being incorporated into the contract, the signature of the Neubauer Decorating Company was actually upon and a part of it.' The sketches referred to are not at the page of the record referred to by counsel, nor are they reported by the master, nor can we find them in the record; but it appears from the evidence that Neubauer, the manager of the Neubauer company, made a sketch or sketches. The Neubauer company, as the contract

signed with that company's name indicates, was to do the decorating part of the proposed work, which could not be done until the contract signed 'Livermore' was performed. The reasons for Neubauer's making suggestions or sketches in reference to the Livermore contract are thus stated in his cross-examination by the Keeley company's attorney:

"Q. 'For the purpose of showing how the trees should be put in?—A. Yes, the trees.

"Q. 'And for the purpose of showing where the arches should be, and the openings?—A. Yes, for the purpose of decorating the same.

"Q. 'For the purpose of showing how the doors should be placed?—A. No.

"Q. 'Why did you put the doors there?—A. To show the effect of the design; to add beauty to the design.'

"Livermore was merely a building contractor and Neubauer an artist in the matter of decoration, and it was but natural that the latter should make suggestions with reference to how the improvements described in the contract signed 'Livermore' should be arranged for the purpose of decoration. Livermore testified that he, himself, caused the sketches to be made.

"*Thirdly*—John E. Emrich, who acted as superintendent of the work for the Keeley company by the request of Thomas F. Keeley, the company's president, testified that when he first saw Livermore the latter told him that he was Mr. Neubauer's representative. This is true, in a certain sense. Mr. Neubauer testified: 'Mr. Livermore gets painting, papering and decorating contracts for the Neubauer Decorating Company, and for getting these contracts we pay him a commission of ten per cent on every contract he gets for the firm. The class of work is painting, decorating and papering. That is all.' The fact that Livermore represented the company to the extent of procuring contracts for painting, papering and decoration is of no significance as determining the ques-

tion whether he was authorized to make such contracts for the Neubauer company as that signed 'Livermore.' There is no direct evidence that Livermore was authorized to act as the agent of the company in making such contracts, or that he did so act.   John E. Emrich, who superintended the work, was a sub-tenant of the Keeley company of the premises in question, and, as stated by counsel for the Keeley company, 'desired to make some changes in the premises which he had leased from the brewery, and got it to agree to advance him some money for the purpose of converting the frame building and the adjoining lot into a beer garden, to be known as the Heidelberg Garden.'   Emrich conducted all the negotiations which resulted in the execution of the contracts in question, and during the negotiations saw both Neubauer and Livermore.   He testified that it was figured that the carpenter work would cost about $1900 and the painting about $1600, and that he signed a bid for $3500 and gave it to Livermore, and Livermore brought back the two propositions in question, which were subsequently accepted by the Keeley company.   Emrich testified that he was present when Livermore handed the propositions to Mr. Keeley; that the latter added °to the decorating contract the words, 'All painting to have not less than three coats,' and also the word 'Superintendent' after the name 'John E. Emrich,' in the address of each proposition, and signed the propositions. This would indicate that Mr. Keeley read the propositions and must have seen that they were signed differently.

"The Neubauer company and Livermore, in their answers, deny that the contract signed 'Livermore' is the contract of the Neubauer company, and the latter company denies that any person was authorized to enter into any such contract in its behalf, and avers that it had no charter authority to make such a contract.   In the charter of the Neubauer company, which, however, was never recorded, the object of its incorporation is thus stated:

'The object for which it is formed is to carry on a general business of painting, papering and decorating.' Both Livermore and Neubauer testified positively that the contract signed 'Livermore' was solely Livermore's contract, and that the Neubauer company had nothing whatever to do with its execution or performance. Livermore testified that after visiting the premises and conversing with Emrich about the contemplated improvements, he told him that he would have Mr. Neubauer come to the premises and make a little rough sketch to see what the decorating and painting would cost; that subsequently he did so, and Neubauer made a sketch and some suggestions, and afterwards he, Livermore, informed Emrich that the decoration could be done in a satisfactory manner for from $1600 to $1800, and Emrich said there were other improvements to be made on which he was getting figures, and he wanted first to see what they were going to cost, when he, Livermore, said he was accustomed to do that kind of work and would like to figure on it, to which Emrich consented, and that afterwards, when the total price had been agreed on, he told Emrich that there would have to be two contracts,—one with the Neubauer company for the decoration, and one with him for improvement and construction; that the Neubauer company did not do the latter kind of work. Emrich, in rebuttal, denied that Livermore said there would have to be two contracts, but the fact remains that there were two contracts, and that Emrich and the Keeley company knew this. The very fact that there were two separate propositions accepted by the Keeley company, constituting, when accepted, two formal, separate contracts, is inconsistent with the hypothesis that the Keeley company supposed it was dealing with a single party. It was contemplated by the Keeley company to make certain improvements on the premises and to paint and decorate the improvements. If the improvements and the painting and decoration were to be done by one party, the

ordinary and natural way would have been to contract
with that party in a single instrument for the whole
work, and the acceptance of two propositions, differently
signed, each for only a part of the work, would seem to
indicate knowledge on the part of the acceptor that the
propositions came from different parties. The evidence is
conclusive that the materials and labor furnished in the
performance of the Livermore contract were furnished
by contract with and employment by Livermore alone.

"All the lien claimants whose claims were allowed,
averred in their answers, and testified, that the materi-
als furnished and labor performed by them were furnished
and performed by contract with Livermore. The evi-
dence is that the Keeley company kept separate accounts
of the two contracts. W. T. Geary, brother of Thomas
F. Geary, who did plumbing work on the premises, tes-
tified that July 11, 1898, he saw Mr. Keeley, president of
the Keeley company, at his office, and informed him that
Thomas F. Geary had just sent to Livermore, by whom
he was engaged, a statement of his work at the Heidel-
berg Garden; that Mr. Keeley inquired what the work
was, and he told him, when Keeley asked for the amount,
and witness told him about $400; that then Mr. Keeley
called in Mr. Sullivan, his book-keeper, and asked him
how much had been paid out on the Heidelberg work,
and Sullivan stepped into the next room and returned
and said, 'There is due to Livermore $300 and to the deco-
rating company $600,' and Mr. Keeley said to Sullivan,
'Well, you get a statement from Livermore of the amount
due Geary and others on this work, and don't pay any
more money until that statement is furnished. Don't
pay any more money to Livermore until that statement is
furnished.' Subsequently, in June, 1896, when the Keeley
company requested a statement, the request was made
to Livermore only. There is no contradiction of this evi-
dence. Neubauer testified that a check was made out by
the Keeley company, payable to the Neubauer Decorat-

ing Company, for $600, which was all the money paid to that company on the decoration contract. Sullivan, the Keeley company's book-keeper, testified that he drew a check payable to that company. All other checks for the work were made payable 'to the order of D. E. Livermore, Managing Agent and Superintendent of Contracts,' and Mr. Sullivan testified, 'All checks drawn are marked as charged to the account they belong to.'"

There are no claims of third parties for work or material against the Neubauer Decorating Company, and the labor and materials furnished by E. L. Roberts & Co., William H. Decker & Co. and Thomas F. Geary were all furnished upon the order of Livermore, between April 12 and June 11, 1898, and notice of a sub-contractor's lien was served upon the appellant by each of said claimants, under section 25 of the Mechanic's Lien law, (Hurd's Stat. 1899, p. 1111,) within sixty days of the completion of the work or the furnishing of the material by them and each of them, and on July 18, 1898, Livermore, by the request of the appellant, made a statement to it of the names of the sub-contractors and the amounts due them, respectively, and on July 18, 1898, by like request he furnished to the appellant a sworn statement in writing showing the amounts due Roberts & Co., Decker & Co. and Geary, as required by section 5 of said statute. It is, however, contended, that the notices served by said claimants were insufficient. This we deem immaterial, as under the last clause of section 25 a notice by the sub-contractor is not necessary where the sworn statement of the contractor, made under section 5, gives to the owner true notice of the amount due and to whom due. *Shaw* v. *Chicago Sash, Door and Blind Manf. Co.* 144 Ill. 520.

It is further urged that the Livermore contract being in writing, no lien can be had thereunder for work done or materials furnished, as it does not provide a time for completing the work, furnishing the materials or making payment thereunder, and that the omission of the con-

tract as to time for completion and payment is conclusive
as against the right to a lien. In the cases of *Freeman* v.
*Rinaker*, 185 Ill. 172, and *Kelley* v. *Northern Trust Co.* 190 id.
401, we held that the original contractor, under the act
of 1895, has no lien if the contract is in writing and no
time for the completing of the work or the furnishing of
the material or for the making of final payment is fixed
therein. Under the rule announced in those cases Liver-
more would not have been entitled to a mechanic's lien
under said contract. A sub-contractor's lien, however, is
given by section 22 of said act, which provides: "Every
mechanic, workman or other person who shall in pursu-
ance of the purposes of the original contract furnish any
materials, apparatus, machinery, or fixtures, or furnish
or perform services or labor for the contractor, shall be
known under this act as a sub-contractor, and shall have
a lien for the value thereof, with interest on such amount
from the date the same is due, in the same manner, from
the same time, on the same property and to the same ex-
tent as is herein provided for the contractor, and also, as
against the creditors of the contractor, on the materials,
fixtures, apparatus or machinery furnished, and on the
money or other consideration due or to become due from
the owner under the original contract." The lien of the
sub-contractor by virtue of this section is not dependent
upon the fact that the original contractor has a lien, and
the sub-contractor, under said section, may have a lien
although the original contractor have none. The lien of
the sub-contractor does not spring out of the lien of the
contractor and is not derived therefrom or made subor-
dinate thereto. While the aggregate of all the liens may
not exceed the contract price agreed upon to be paid by
the owner, if he comply with the statute and there is no
fraud this limitation concerns not the fact of a lien but
the extent thereof. The lien of the sub-contractor being
a direct lien its existence does not depend upon the ex-
istence or non-existence of a contractor's lien, and the

waiver of a lien by a contractor, either in express terms or by the execution of a contract which does not create a lien under the statute, will not affect the sub-contractor's lien. The contractor may waive or estop himself to enforce a lien, but the sub-contractor may, nevertheless, bring himself within the protection of the statute by complying with the provisions thereof, and, independently of the contractor, assert a lien for his work or materials. The cases, therefore, relied upon have no application to the liens of the sub-contractors sought to be enforced in this case.

The claim that some of the materials furnished was for the improvement of other premises, and that some of it was used in making screens, boxes, etc., which were not attached to the real estate, and that there was no sufficient proof of the value thereof, is without force. The proof shows that the materials furnished were all delivered at the place where the improvement was being constructed, for the purpose of being used in such improvement. Section 7 of said act provides that the lien for material shall not be defeated because of lack of proof that the material, after the delivery thereof, actually entered into the construction of the building or improvement, provided it is shown that such material was in fact in good faith delivered at the place where said building or improvement was being constructed, for the purpose of being used in such construction; and John E. Emrich, the superintendent of appellant, was at the premises and directed the manner in which the material furnished and the labor performed should be used and performed, and the evidence shows the prices charged for such labor and material were reasonable. and the usual and customary prices for such labor and material at the time they were delivered and furnished in the city of Chicago.

Under section 33 of said act all payments made by the appellant to Livermore were wrongfully made as against said claimants, as the same were made without exercis-

ing or enforcing the rights and powers conferred upon it in sections 5 and 23 of said act. The fact, therefore, if it be a fact, that Livermore failed to perform $353.50 of work specified in his contract would not defeat the lien of said claimants, as the contract price agreed upon was $1900, and after deducting the sum of $353.50 therefrom there remained $1546.50, which exceeds the total amount, with interest, held to be due said claimants.

We have examined this record with care and find no reversible error therein. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*