Krack Corporation, Plaintiff-Appellant, *v.* Sky Valley Foods, Inc. *et al.,* Defendants-Appellees.

(No. 53931; ▮)

First District—June 4, 1971.

*Rehearing denied July 1, 1971.*

Walter P. Altenburg, of Chicago, (John Demling, and Siegan & Rubinoff, of counsel,) for appellant.

Frankenstein, Lewis & Feierberg, of Chicago, (A. S. Frankenstein and R. R. Frankenstein, of counsel,) for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, a sub-contractor, filed its complaint to foreclose a mechanics lien. The trial court found that there was due plaintiff the sum of $5188.38, but that the owners, Sky Valley Foods and Skyval Realty Corporation, were entitled to rely upon a "final sworn statement" furnished by the contractor, Midwest Engineering, which purportedly showed that plaintiff was paid in full, and that the owners were to be protected against plaintiff's claim except as to a retained sum of $1000.00. The trial court found a lien in favor of plaintiff in the sum of $1000.00 plus interest. Plaintiff appeals. The owners cross-appeal from the latter award.

The owners contracted with Midwest Engineering for certain improvements and the latter entered into a contract with plaintiff to supply refrigeration units.

On October 13, 1967, plaintiff sent a letter by certified mail to the owners stating that they would be shown as suppliers upon the "Con-

tractor's Affidavit [sic]", and that plaintiff would "* * * supply you with a Waiver of Lien upon receipt of payment * * *." Although the owners had paid Midwest some $1000.00 prior to that date, on October 18th, Midwest first supplied a "sworn statement" together with an invoice for $12,968.00. Such "sworn statement" listed plaintiff as a sub-contractor whose contract was in the amount of $5172.00. That amount was carried in a parallel column designated "Balance to Complete" It seems agreed that such designation means that the entire contract of plaintiff was unpaid. The owners paid this invoice from Midwest on October 30, 1967.

In November, payments approximating $2460.00 were made by the owners and on December 1st, an invoice dated November 28th in the sum of $12,622.00 was paid by the owners to Midwest. The owners did not obtain or receive a "sworn statement" from Midwest prior to these payments. At the time of this last payment, the owners retained less than the amount shown to be due plaintiff in Midwest's "sworn statement" dated October 18th.

On December 8th, Midwest submitted to owners a second "sworn statement" reflecting plaintiff's contract amount of $5172.00, with a like amount in a parallel column designated "Total Previous Request". The remaining parallel columns designated respectively: "Amount this Request" and "Balance to Complete" were left blank.

The owners claim such form of statement means that Midwest had made a sworn statement that plaintiff had been paid. The magistrate adopted such conclusion and found that the owners should be "protected" despite the fact that they had paid some $13,000.00 to Midwest prior to receiving such "sworn statement", and did not then have sufficient retained funds to pay plaintiff.

The owners' argument that plaintiff's notice by mail dated October 13th did not then comply with the statute, Ill. Rev. Stat. (1967), ch. 82, par. 24, need not be discussed. In oral argument plaintiff has conceded that such letter did not serve as statutory notice, but calls attention and believes some effect should be given to the language of the letter as to supplying waiver of lien upon receipt of payment.

We find a consistent statutory pattern for notice which creates and establishes the owners' liability to a sub-contractor or material man. Section 5 creates the duty of the contractor to give and the owner to obtain a verified "statement in writing" of the names of parties furnishing labor or material and the amounts to become due to them. This data was accurately supplied by Midwest in its statement of October 18th.

Section 24 provides the manner whereby a sub-contractor may give notice to the owner. This section contains the further language:

"and, * * * such notice *shall not be necessary* when the sworn statement of the contractor or sub-contractor provided for herein shall serve to give the owner notice of the amount due and to whom due * * *." (Emphasis supplied)

Section 21 creates the lien of the sub-contractor or material man and includes the following language:

"But where the contractor's statement, made as provided in section five (5), shows the amount to be paid to the sub-contractor, or party furnishing material, or the sub-contractor's statement, made pursuant to section twenty-two (22), shows the amount to become due for material; * * *, and thereafter such sub-contract shall be performed, or material to the value of the amount named in such *statements or notice,* shall be prepared for use and delivery, * * * then, and in any of such cases, such sub-contractor or party furnishing or preparing material, regardless of the price named in the original contract, shall have a lien therefor to the extent of the amount named in such *statements or notice.*" (Emphasis supplied).

Within the language and meaning of the statute, the owners were clearly and adequately notified of the claims and rights of the plaintiff through the statements supplied by Midwest on October 18th. Any deficiencies in the letter of October 13th do not control the disposition of the claim. In *Brennan v. McEvoy & Co.,* 196 Ill.App. 336, the court said:

"It is true if a statement in compliance with the provisions of section 5 had been voluntarily furnished the owner by the builder, appellant would have been protected thereby, and it is therefore material whether this was such a statement."

The court subsequently noted that the purpose of these enactments was to give the owner notice of claims that might be the foundation of liens against his premises, and also to protect the claimants covered by the statute.

■■ A sub-contractor or material man is not required to give notice where the contractor has, in fact, given notice of the amount due or to become due. *Keeley Brewing Co. v. Decorating Co.,* 194 Ill. 580; 62 N.E. 923 and *Shaw v. Chicago Sash, Door, etc. Manuf'g. Co.,* 144 Ill.520; 33 N.E. 870.

Section 27 provides that when the owner is notified as provided in the Act, he shall retain from money due or to become due the contractor, an amount sufficient to pay the demand of a sub-contractor, and shall pay the sum to the parties entitled. It explicitly provides that payments made to the sub-contractor shall be considered the same as if paid to such contractor and:

"Any payment made by the owner to the contractor after such notice, without retaining sufficient money to pay such claims, shall be considered illegal and made in violation of the rights  *  *  * sub-contractors and the rights of such laborers and sub-contractors to a lien shall not be affected thereby,  *  *  *."

Section 32 provides that no payments to the contractor shall be regarded as rightfully made as against the sub-contractor if made by the owner without exercising and enforcing the rights conferred in Section 5.

■■  We consider defendant's argument that the owners were entitled to rely upon the statement from Midwest, dated October 18th, which cited *Knickerbocker Ice Co. v. Halsey Co.*, 262 Ill. 241; 104 N.E. 1027. The premise of that case is that the owner, in fact, "retained a sufficient sum from the contract price to pay the sums due and to become due" to the sub-contractor. As of December 1st, the only statement theretofore presented to the owners by Midwest disclosed that the sum of $5172.00 was to become due plaintiff. Between the dates of October 18th and December 1st, the owners paid some $15,000.00 without either retaining the amount shown to become due plaintiff, or requiring a statement from the contractor. No retained balance provided for plaintiff's lien. Within the clear language of the statute, such payments were not rightfully made as against plaintiff.

The only aspect in which reliance might be argued is as to the sum of $3187.00 paid on December 19th, following the statement of December 1st which purported to show no amount due to plaintiff. In *Knickerbocker*, the court said:

"In the absence of any such notice served by the sub-contractor the owner has the right to rely and act upon the sworn statements made to him under said section 5 by the contractor, unless he knows, *from any source,* that the same are false" (Emphasis supplied)

In *Ceco Steel Products Corp. v. Couri*, 311 Ill.App. 297; 35 N.E.2d 810, it is said that the owner would be protected by the statement of the contractor:

"*  *  *  unless there was reason for the owner of the property to suspect that it was false, or has knowledge that it was false."

When the owners paid the last sum, $3187.00, on December 19th, there had been but one statement prior to the statement of December 8th of Midwest. That prior statement showed $5172.00 to become due plaintiff. There was, in fact, a basis for suspecting that the last statement of Midwest was false in that it was reasonably ascertainable that no prior request had been made to pay the amount to become due plaintiff. The latter's letter of October 13th, while not a statutory notice of lien, need

not be disregarded as a business communication that plaintiff expected to furnish a waiver of lien upon receipt of payment. Since the owners never did retain the amount shown to become due plaintiff by Midwest's first statement, and the final payment made to the contractor was for a substantially lesser sum, it is reasonable to conclude that the owners did not, in fact reasonably rely upon the statement of December 8th to conclude that plaintiff's lien had been paid.

Here, the owners had notice of the lien at issue within the provisions of the statute. In the language of Section 21, the owner is protected unless payment is made to the contractor:

> "In violation of the rights and interests of the persons intended to be benefited by this act:   *   *   *"

The cases reviewed do not suggest that the owner may have abandoned the duty to examine the business and blindly rely upon the statement of his contractor. This case is, indeed, one which demonstrates the legislative objective.

In view of these conclusions, it is not necessary to consider the claims made upon cross-appeal.

The judgment is reversed and the cause remanded with directions to enter a decree in favor of plaintiff.

Reversed and remanded, with directions.

SMITH, P. J., and CRAVEN, J., concur.