2 Ill. App.3d 660 (1971)
275 N.E.2d 663
CAPITAL PLUMBING & HEATING SUPPLY COMPANY, Plaintiff,
v.
JOHN A. SNYDER et al., Defendants-Appellees.  (ROBERT E. MIDDEN, d/b/a MIDDEN SUPPLY COMPANY, Defendants-Counterclaimants-Appellants.)
No. 11495.
Illinois Appellate Court  Fourth District.
November 23, 1971.
*661 *662 Baird, Latendresse, McCarthy & Weinman, of Decatur, (Donald G. Baird, of counsel,) for appellants.
Rosenberg, Rosenberg, Bickes & Johnson, of Decatur, (Joseph L. Rosenberg and David L. Johnson, of counsel,) for appellees.
Reversed and remanded.
Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:
This is an appeal from the denial by the trial court of two mechanics' liens, one filed by a subcontractor, Ted Bates, and the other filed by a materialman, Robert Midden. The appellants herein are intervening petitioners in a mechanic's lien foreclosure suit filed by Capital Plumbing & Heating Supply Company. It is the second appeal arising out of the same factual situation, the first being reported in Capital Plumbing & Heating v. Snyder, 104 Ill. App.2d 431.
A more comprehensive review of the facts is contained in the former opinion. The material facts for the purpose of this appeal are as follows: In June of 1965, Doris and John Snyder, the owners in joint tenancy of certain real estate, entered into a contract with GAC Construction Company for the construction on jointly-owned property of an apartment building for $92,600. GAC entered into an oral contract with Ted Bates, an appellant herein, in September of 1965 for certain ornamental metal work and air-conditioning stands for this apartment building. GAC also entered into a contract with Nichols and Camp for plumbing, heating and air-conditioning work. Nichols and Camp ordered and purchased from Robert Midden, the other appellant herein, during September to November of 1965, certain materials for the plumbing and heating work which Nichols and Camp had contracted to do with GAC.
Midden supplied the materials to Nichols and Camp between September 14 and October 18, 1965. These materials were installed on the premises owned by the Snyders. Between November 15 and November 18, 1965, Midden personally served a notice of lien addressed to both John A. Snyder and Doris L. Snyder on Doris L. Snyder.
Bates furnished and installed the air-conditioner stands and iron railings during the latter part of 1965 and early 1966. On January 3, 1966, he allegedly completed the work by going out to the construction site and installing a railing and painting some of the other rails. On March 4, 1966, Bates personally served a notice of lien on Doris L. Snyder. This notice of lien was directed to both John A. Snyder and Doris L. Snyder.
At the time of entering into a contract with GAC Construction Company, the Snyders had entered into a construction loan with Security *663 Federal Savings of Decatur. Admitted into evidence is a payout record on this loan showing the dates and the parties to whom the payouts were made. These records show that as of November 15, 1965, the payouts on this construction loan amounted to approximately $62,000. They also show that subsequent to November 15, there were payouts from this fund of approximately $32,000 to $33,000 made to the general contractors, subcontractors and owners. As of March 4, 1966, the records show that the payments totalled $95,297.32 and there was only $382.00 left in the account; this amount was subsequently paid to Doris L. Snyder. From August 5 to September 27, 1965, there were four affidavits as required by Ill. Rev. Stat. 1965, ch. 82, par. 5, submitted to the Snyders by the contractor listing the subcontractors and materialmen and the amounts due to each. None of these affidavits listed either Bates or Midden.
The evidence also reveals that the Snyders ordered extras and that a contractor's lien was filed showing the cost of these extras as being being approximately $8,821.88. Testimony was offered as to some of these extras and as to the items testified to, the cost was placed at $5,573.31. The record also reveals that between March 4, 1966, and the time of the trial, the owners paid out an additional $4,276.22 to contractors on the job.
In March of 1966, the Snyders sold the premises to Verle and Helen Jane Dollahan, subject to an escrow agreement for the payment of valid liens.
The appellants herein are intervening petitioners in the mechanic's lien suit filed by Capital Plumbing & Heating Company. The matter went to hearing and after the hearing, the court ruled in favor of the owners, denying the validity of the liens. The trial court by its order found the following: (1) the service of the sixty-day subcontractors notice was effective only as to Doris L. Snyder and was ineffective as to the other joint tenant; (2) John A. Snyder and Doris L. Snyder have paid in excess of the price established in the contract between themselves and the general contractor; and (3) neither of the petitioners comes within the exceptions of Section 21 of the Mechanics' Liens Act. The court in its order did not, however, establish what the contract price was.
As a result of the aforesaid findings, the court entered judgment against each of the intervening petitioners, Midden and Bates and dismissed their petitions to foreclose their liens for want of equity.
It is contended on this appeal that the service upon Doris L. Snyder was ineffective to bind the interest of the other joint tenant, her husband. The applicable section of the Mechanics' Liens Act is Section 24 which provides:
"Sub-contractors, or party furnishing labor or materials * * * *664 shall within sixty (60) days after the completion thereof * * * cause a written notice of his claim and the amount due or to become due thereunder, to be personally served on the owner or his agent or architect * * *." (Emphasis supplied.)
In regard to that section, it is stated in Love, Illinois Mechanics' Liens, 2dEd., on page 363:
"The courts have consistently held that notice must be handed to the owner or his agent in person * * *."
Both Midden and Bates personally served the notice of lien upon Mrs. Snyder; this notice of lien was directed to both Mr. and Mrs. Snyder.
 1 As has been pointed out by numerous cases, the statutory provisions of the Mechanics' Liens Act are in derogation of the common law and are strictly construed and the rights of the parties are determined by strict compliance with the provisions of the statute. Marriage, although it creates a contractual relationship, does not create one of principal and agent. In Throgmorton v. Mosak, 245 Ill. App. 330, the court held that notice of lien served upon the wife was not sufficient to bind her husband even though the wife did deliver the notice to the husband. The court in that case, denying that the marriage creates an agency, stated on p. 333 as follows:
"The legislature has declared that such a notice must be personally served and the courts have no authority to say that service in a different manner shall be sufficient."
 2 Similarly, the fact of joint ownership of the real estate does not appoint the joint owner as an agent of the other owner for the purpose of receiving the notice of lien. Mantonya v. Reilly, 184 Ill. 183, 56 N.E. 425; Liese v. Hentze, 326 Ill. 633, 158 N.E. 428.
 3 However, the foregoing cases are distinguishable from the situation at hand. In this case, there is not only the marriage and the service upon one of the spouses; there also is the fact of joint ownership of the real estate. Added to these factors, there is the testimony of both of the Snyders that they at different times appeared on the jobs and gave directions as to what they wanted done and the changes to be made. Both of them signed the construction contract with GAC Construction Company and were obligated thereunder. Both of them appeared at different times on the payout checks on the construction loan. Both of them stood to make a profit or sustain a loss. Under Illinois law, when two parties have made joint contributions to a venture in which they have a joint proprietorship interest and have exercised management and control over the venture, and are subject to making a profit or sustaining a loss, the relationship becomes one of a joint venture. In Carroll v. Caldwell, 12 Ill.2d 487, 147 N.E.2d 69, the court stated as follows on pages 496-497:

*665 "Accordingly, it can be said that a joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that there must be a community of interest in the performance of a common purpose, a proprietary interest in the subject matter, and a right to direct and govern the policy in connection therewith, and a duty, which may be altered by agreement, to share both in profit and losses."
 4 Service of notice of lien upon one of the two partners, or joint venturers as the case may be, has been held to be notice to both. (Lurya Lumber Co. v. Bernstein, 168 Ill. App. 85.) Similarly, the dictum in Western Plumbing Supply Co. v. Horn, 269 Ill. App. 612, indicated that service upon a husband who was acting as agent for the wife was proper service on the mechanics' liens statute. The wife was served in this case and both parties had contributed their property to the venture and directed the construction of the building and jointly obligated themselves under the contract with the general contractor for the construction of the building and had approved various payouts made on the construction loan. Personal service upon one of the individuals under these circumstances is sufficient service to bind both parties to this joint venture.
 5 A further issue raised by the appellees is the question of the timeliness of the service of the notice of lien with regard to the Bates claim. The appellees contend that the Bates claim was not served within the sixty days required by the statute. The trial court did not make any finding on this point. The evidence introduced in the trial court is that Bates was contracted by GAC on September 9, 1965, for the furnishing of metal railings and other material and subsequently on December 8, 1965, for the furnishing of two air-conditioner stands. The special railings were delivered during various times. The testimony is that the last railing which was a five foot ornamental railing was installed on January 3, 1966. There is also testimony that there was some painting done at that time on the railings previously installed. The appellees contend that insignificant and trivial work will not extend the sixty day period for service and cite Alexander-Hendry Co. v. Mooar, 242 Ill. App. 516, and Schaller-Hoerr v. Gentile, 153 Ill. App. 458. In each of these cases, the work involved was minimal. In the first case, the work was regarded by the court as an unwarranted attempt to revive the lien by work which had not been ordered and by doing repair work not under the original contract. In the latter case, the contract was regarded by the court as completed prior to the work and the work was done to obtain a lien. The testimony here is sufficient to sustain the claim that the work was not completed until January 3, 1966, as at that time a railing was installed and painting was done on the railings that had previously been installed. There is no *666 indication that this was work done for the purpose of frustrating the Mechanics' Liens Act and its time limitations. The testimony is that it was done to complete the work so that the bill could be submitted to the general contractor, which was done on the same day. The notice of the mechanic's lien being served on March 4, within sixty days of January 3, was timely.
The next point raised is the question of whether or not the owners should be required to pay more than the purchase price for the building. The court in its order held that the owners had paid in excess of the contract price. We assume from the trial court's order that the contract price found by the court was the original $92,600, although the court did not make any explicit finding. Insofar as material herein, section 21 of the Mechanics' Liens Act provides as follows:
"Every mechanic, workman or other person who shall furnish any materials * * * or furnish or perform services or labor for the contractor, or shall furnish any material to be employed in the process of construction * * * shall be known under this act as a sub-contractor, and shall have a lien for the value thereof * * *.
In no case, except as hereinafter provided, shall the owner be compelled to pay a greater sum for or on account of the completion of such house, building or other improvement than the price or sum stipulated in said original contract or agreement, unless payment be made to the contractor or to his order, in violation of the rights and interests of persons intended to be benefited by this * * *."
 6, 7 The appellees' position is that they not only obtained Section 5 affidavits and paid out pursuant to these affidavits, but that they paid out more than the purchase price, thereby removing them from any liability. True, payments made in reliance on a Section 5 affidavit are credited to the owners. The risk is upon the sub-contractor, who to protect himself must serve a notice of lien. Until he does, the owner may pay out in accordance with the affidavit and even if a subcontractor's name is omitted, the owner is protected. It has furthermore been held that there is no necessity of obtaining a Section 5 affidavit before each payment, one having been held sufficient. Sanaghan v. Lawndale National Bank, 90 Ill. App.2d 254, 232 N.E.2d 546. However, once the owner is put on notice either by the contractor's affidavit or the subcontractor's notice of lien, he acts at his peril unless he retain sufficient funds to pay the subcontractor. Krack Corporation v. Sky Valley Foods, Inc. (Ill. App.2d), 273 N.E.2d 202.
The trial court's holding was that the contract price had been paid. We conclude otherwise from our reading of the record. The contractor's price is not only the contract price of $92,600, but includes the extras for which the owners are obliged to pay. According to the lien filed by GAC, *667 these extras were supplied at a cost of $8,821.88, raising the contract price to $101,421.88. The testimony was that all of these items were orally ordered by the Snyders and testimony as to the cost was offered only to some of the items, which totalled $5,573.31, for a total contract price of $98,173.31. The total payments under the contract as shown in the exhibit of the escrow agent totalled $62,620.74 as of November 18, 1965, and $95,297.32 as of March 4, 1966, and subsequent to March 4, 1966, $4,276.22 was paid out, for a total of $99,246.54.
 8 The appellees attempt to restrict the contract price to the $92,600 and exclude the extras on the ground that the contract required written orders which were not obtained. The uncontradicted testimony is that the items were ordered by the owners and placed on the premises. They are, therefore, estopped to deny the obligation to pay for these items. Salomon-Waterton Co. v. Union Asbestos & Rubber Co., 263 Ill. App. 583.
 9 We therefore find that as of November 18, 1965, the date of the service of the Midden notice of lien and as of March 4, 1966, the date of the service of the notice of the Bates lien, the contract price had not been fully paid by the owners. Subsequent payments did not total the contract price if all the extras are included, but were in excess of it if only those extras are included for which there was testimony as to price. However, it is not material for this opinion to determine which of these figures is actually the correct figure for the reason that payments subsequent to the service of the notice of lien were wrongful and in neither case at the time of the service of the notice of lien, had the contract price been reached.
Section 27 provides as follows:
"When the owner or his agent is notified as provided in this act, he shall retain from any money due or to become due the contractor, an amount sufficient to pay all demands that are or will become due such sub-contractor * * *. Any payment made by the owner to the contractor after such notice, without retaining sufficient money to pay such claims, shall be considered illegal * * *."
It is further stated in Love, Illinois Mechanics' Lien, 2d Ed., p. 337, that when the owner has notice of sub-contractor's rights through the original contractor's statement under Section 5, or through the sub-contractor's sixty (60) day notice, and nevertheless makes payment to the original contractor without retaining funds for that sub-contractor, such payment is wrongful within the meaning of the Illinois Mechanics' Liens Act. Cases so holding are Krack Corporation v. Sky Valley Foods, Inc., (Ill. App.2d), 273 N.E.2d 202; Butler v. Gain, 128 Ill. 23, 21 N.E. 350; Chicago & Riverdale Lumber Co. v. Quinliven, 204 Ill. App. 166; and Gilbert v. Croshaw, 178 Ill. App. 10. To allow the owner to pick and *668 choose which one of the subcontractors or materialmen he wishes to pay and then to thumb his nose at the unpaid contractors and materialmen saying that he has paid its full contract price would seem not only contrary to the provisions of the Mechanics' Lien Act but contrary to equity and good conscience. We, therefore, hold that the Midden and Bates claims for lien are valid liens upon the real estate here involved and reverse the trial court and direct that the court proceed in accordance with the opinion herein.
Reversed and remanded.
CRAVEN and TRAPP, JJ., concur.