No. 46,544

SCHWALLER LUMBER COMPANY, INC., *Plaintiff* v. CHARLES WATSON and DORIS M. WATSON, his wife, *Appellants*, HUBERT A. SANDERS d/b/a GOLDEN BELT LUMBER COMPANY; DARRELL BLOSSER d/b/a HAYS READY MIX; and ADOLPH J. FLAX, *Appellees.*

(505 P. 2d 640)

142

*Norbert R. Dreiling,* of the firm of Dreiling & Bieker, of Hays, argued the cause, and *Dennis L. Bieker,* of the same firm, was with him on the brief for the appellants.

*Don C. Staab,* of Hays, argued the cause, and *F. F. Wasinger,* also of Hays, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This appeal brings into question the regularity of steps taken by three subcontractors to perfect their mechanic's lien claims. The trial court upheld all three liens and decreed their foreclosure. The landowners have appealed. The facts have been stipulated.

Charles Watson and Doris M. Watson own the real estate in question as joint tenants with right of survivorship. Joe Pfeifer contracted to build a four-plex structure on the land for the sum of $24,000. Joe was paid $23,000 on the contract price but he neglected to pay all the obligations he incurred for the project. We shall refer to the landowners either by name or as owners and to the subcontractors either as claimants, or by individual names.

Schwaller Lumber Company, one of several mechanic's lien claimants, commenced this action to foreclose its lien. Numerous other lien claimants were joined as defendants. All lien claims have now been settled except those of Hubert A. Sanders d/b/a Golden Belt Lumber Company for $3,627.55, of Darrell Blosser d/b/a Hays Ready Mix for $675.22 and of Adolph J. Flax for $488. It has been stipulated that these three lien claimants are subcontractors and that notice of their lien claims had to be given pursuant to K. S. A. 1968 (now 1972) Supp. 60-1103 (*a*).

No point is raised as to the sufficiency of the lien statements themselves, or as to their filing. The questions presented are whether copies of the lien statements were served by mail upon the property owners agreeably to statutory requirements.

K. S. A. 1968 Supp. 60-1103 (*a*) provides in pertinent part:

". . . The claimant shall either cause a copy of the lien statement to be served personally upon the owner and any party obligated to pay the same in the manner provided for the service of summons . . . or shall mail a copy of the lien statement to the owner of the property and to any party obligated to pay the same by *restricted* registered or certified mail, or if the address of the owner or such party obligated to pay the same is unknown, and

cannot with reasonable diligence be ascertained, a copy of the lien statement shall be posted in a conspicuous place on the premises." (Emphasis added.)

K. S. A. 60-103, in force when this case arose, defines the term "restricted mail" as meaning mail which carries on its face, in a conspicuous place where it will not be obliterated, the endorsement "deliver to addressee only" and which also requires a return receipt or a statement that the addressee refused to accept and receipt for the same. This statute was amended in 1970 but its import, so far as we are now concerned, is substantially the same.

It is stipulated that Mr. Sanders forwarded separate lien statements to each of the Watsons by *unrestricted* certified mail only, and that neither mailing carried the endorsement "deliver to addressee only." Mr. Watson signed a return receipt for each of those mailings.

We believe it clear that Mr. Sanders did not comply with the explicit provisions of K. S. A. 1968 Supp. 60-1103 (*a*) so far as mailing is concerned. An identical situation came before this court in *Rounsavell v. Tipton,* 209 Kan. 366, 497 P. 2d 108. In that case the lien claimants mailed copies of their lien statements by certified mail, return receipt requested, exactly as Sanders has done in this case. It was contended by the lien claimants in *Rounsavell* that the qualifying adjective "restricted" referred to registered mail alone and not to certified mail.

This contention was rejected in *Rounsavell* and the court held that where a copy of the lien statement is mailed to the owner, the mailing, whether it be by registered or by certified mail, must also be *restricted.* Our decision in that case is controlling here. In the *Rounsavell* opinion we said:

"It has long been the rule in this jurisdiction that a mechanic's lien is purely a creature of statute; that there is no privity of contract between subcontractor and owner; that the former can obtain a lien only by compliance with the statutory provisions; that it is not enough that the claimant has furnished material and filed his lien, but service of notice upon the owner is one of the necessary steps to obtain a lien; and that without such notice a claimant obtains nothing. (See *Potter v. Conley,* 83 Kan 676, 112 Pac. 608; *Bridgeport Machine Co. v. McKnab,* 136 Kan. 781, 18 P. 2d 186; *Jones v. Lustig,* 185 Kan. 208, 341 P. 2d 1018, *D. J. Fair Lumber Co. v. Karlin,* 199 Kan. 366, 430 P. 2d 222.) . . . " (p. 368.)

This point of view is succinctly phrased in *Liese v. Hentze,* 326 Ill. 633, 637, 158 N. E. 428:

". . . While the [lien] act is to be liberally construed as a remedial act, yet mechanics' liens exist only by virtue of the statute creating them, and such

statutes must be strictly followed with reference to all requirements upon which the right to a lien depends. . . ."

We find it unnecessary, in view of what we have already said, to take up the other challenges lodged against the Sanders claim.

Objections going to the claims of Flax and Blosser are premised on an entirely different ground than the Sanders claim. These gentlemen sent their lien statements by restricted certified mail as the statute requires. However, Mr. Flax addressed his statement only to Mr. Watson, who dutifully executed the return receipt. Mr. Blosser, on the other hand, forwarded his statement in a single envelope addressed both to Charles Watson and Doris M. Watson. However, only Charles signed the return receipt.

So far as is now pertinent, K. S. A. 1968 Supp. 60-1103 (*a*) provides that a subcontractor shall mail a copy of his lien statement to the *owner of the property*. The Watsons advance the argument that the term "owner" implies the entire ownership of the real estate in question, and that a subcontractor must mail copies of his lien statement to *all* the owners in order to perfect his lien as to any one of them. In other words, the appellants would have us define the term "owner" as "owners" and would have us require that all the owners be served before a statutory lien may come into being.

The specific question has not heretofore been raised in this court, although the term "owner" has been the subject of prior discussion. In *Toler v. Satterthwaite*, 200 Kan. 103, 434 P. 2d 814, this court said:

". . . As used in the statute relating to liens for labor and material, the word 'owner' does not admit of any narrow construction that it include only the holder of the fee, but means the owner of an interest or estate in real property, and includes every character of title, whether legal or equitable, fee simple or leasehold. (Citing cases.)" (p. 109.)

See also, in this connection, *Schram v. Manary*, 123 Or. 354, 260 Pac. 214; 53 Am. Jur. 2d Mechanics' Liens, § 120, pp. 640, 641.

It is generally held that the statutory notice must be served upon the owner himself. (53 Am. Jur., Mechanics' Liens, § 176, p. 695.) Kansas has recognized the validity of this rule. In *Lumber Co. v. Dettinger*, 110 Kan. 114, 202 Pac. 622, the land upon which a lien was claimed belonged to an unfortunate lady who had been adjudged insane and was a patient in the state hospital. Notice of the lien was served on her husband as the owner, and this service was held to be invalid. In the later case of *Jones v.*

*Lustig,* 185 Kan. 208, 341 P. 2d 1018, ownership was vested in a husband and wife. Notice of the lien was served on their attorney and agent. In holding the service insufficient, we said:

"Where the statute requires service on the owner of the notice of the filing of a mechanic's lien, the statutory language must be literally observed and notice must be served upon the owner himself. (36 Am. Jur., Mechanics' Liens § 128.) Our statute does not provide for service of the notice upon an alleged agent or attorney of the owner. . . ." (p. 211.)

May it be said that service of Flax's notice on Mr. Watson would be effective to constitute service on his wife by virtue of the marriage relationship? We believe not. In *Throgmorton v. Mosak,* 245 Ill. App. 330, the court said that marriage, even though it was a contractual relationship, did not create the relationship of principal and agent, and that service of the lien notice on the wife was not sufficient to bind her husband even though she may have delivered the notice to him.

Nor is joint tenancy alone sufficient to create an agency relationship whereby service of notice on one joint owner is sufficient as to all. This was pointed out in *Capital Plumbing & Heating Co. v. Snyder,* 2 Ill. App. 3d 660, 275 N. E. 2d 663, in these words:

". . . [T]he fact of joint ownership of the real estate does not appoint the joint owner as an agent of the other owner for the purpose of receiving the notice of lien. . . ." (p. 664.)

Mr. Flax failed entirely to mail a copy of his lien statement to Mrs. Watson and nothing is shown in the record to supply the deficiency.

It will be recalled that Mr. Blosser mailed his statement in one envelope addressed jointly to Charles Watson and Doris M. Watson. It is stipulated, however, that the return receipt was signed only by Mr. Watson, with no showing of delivery to his wife, and the record contains nothing from which notice to the latter may be inferred.

We have said that the purpose of requiring service of a notice of lien is to advise the owner of the property of the existence of the lien, afford him opportunity to investigate the claim and determine its validity and to avoid paying the same account twice. (*Toler v. Satterthwaite,* supra, and cases cited therein.)

The requirement of delivery to "addressee only" when service is by mail is to make sure the owner will be afforded these opportunities. We cannot presume from this record that Mrs. Wat-

son was ever apprised of the Blosser claim. In a very similar situation, the Maryland Supreme Court in *Bukowitz v. Maryland Lumber Co.*, 210 Md. 148, 154, 122 A. 2d 486, had this to say:

". . . There is nothing in the statute that authorizes service by registered mail which does not actually reach the intended recipient. . . ."

We have been given to understand by word of mouth that postal regulations require the obtaining of return receipts from all addressees where restricted mail is used, and Mr. Blosser can scarcely be faulted if this rule was breached. He might, however, have obviated the present difficulty had he addressed separate mailings to the Watsons or had he requested postal authorities to run the mailing through channels again.

It is the general rule that service of a mechanic's lien statement on one cotenant is not binding on a cotenant, or other owner, and such is true even though the co-owner happens to be a spouse. (*Dente v. Bullis*, 196 Md. 238, 76 A. 2d 158; *Shea v. Peters et al.*, 126 Or. 76, 268 Pac. 989; *Liese v. Hentze*, supra; *Apex Roofing Supply Co. v. Miller*, 79 N. J. Super. 68, 190 A. 2d 553.)

We conclude that the Flax and Blosser claims are not enforceable against Doris M. Watson, since she is not shown to have been personally served with notice. This conclusion, however, does not completely dispose of the present appeal so far as these particular claims are concerned.

The record shows, by stipulation of the parties, that both Flax and Blosser mailed notice of their lien claims to Charles Watson by restricted certified mail and that he, in turn, executed proper receipts therefor. This method of service upon Mr. Watson fulfilled the statutory requirements and there is no contention to the contrary. Accordingly, we believe his interest in the real estate is subject to the statutory lien and that action might properly be taken to foreclose the same agreeably to Kansas procedures.

The majority, and what we believe is the correct, rule appears to be that where the ownership of real estate is divided, a mechanic's lien may be enforced against the interest of an owner who has properly been served with the required statutory notice, even though the interests of other owners who were not so served may not be subject to the lien. (*Dente v. Bullis*, supra; *Shea v. Peters et al.*, supra; *Liese v. Hentze*, supra; *Apex Roofing Supply Co. v. Miller*, supra.)

Mr. Watson, as a joint tenant with his wife Doris, owns an

interest in the property against which Flax and Blosser filed their liens. Under the provisions of K. S. A. 58-501 his joint interest is subject to execution, levy and sale. This statute, which deals both with tenancy in common and with joint tenancy, concludes with the following provision:

"The provisions of this act shall apply to all estates in joint tenancy in either real or personal property heretofore or hereafter created and nothing herein contained shall prevent execution, levy and sale of the interest of a judgment debtor in such estates and such sale shall constitute a severance."

In our view the trial court was correct in decreeing foreclosure of the Flax and Blosser liens against the interest of Charles Watson.

The judgment entered in the court below is reversed insofar as foreclosure of the lien claim of Hubert A. Sanders is concerned. The judgment foreclosing the Flax and Blosser lien claims against the interest of Doris M. Watson is also reversed. The judgment is affirmed so far as it decrees foreclosure of the Flax and Blosser liens against Charles Watson's interest in the property.

It is so ordered.