THE BERKSHIRE WAREHOUSE COMPANY, Appellee, *vs.* HILGER & Co. *et al.*—(EDWARD HINES LUMBER COMPANY, Appellant.)

*Opinion filed June 24, 1915.*

1. MECHANICS' LIENS—*owner may rely on contractor's statement in absence of notice to contrary.*   An owner who requires the contractor to make the sworn statement required by section 5 of the Mechanic's Lien act may rely upon the truth of such statement in the absence of notice of its falsity, as sub-contractors have the right, under section 22 of said act, to give notice to the owner of the contractor's indebtedness to them.

2. SAME—*effect where the owner makes first payments without any sworn statement.*   The fact that the owner made three payments to the contractor without requiring a sworn statement does not subject the premises to a lien in favor of a sub-contractor whose claim had not then become due, where all subsequent payments were made on sworn statements of the contractor and sufficient funds retained by the owner to pay not only all the claims shown thereon but also the claim of the sub-contractor in question had his claim been shown, and where the owner had no notice of the sub-contractor's claim until after all payments had been made.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ADAMS, CREWS, BOBB & WESCOTT, (JAMES B. WESCOTT, of counsel,) for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal, on a certificate of importance, by the Edward Hines Lumber Company from a judgment of the Appellate Court affirming a decree of the superior court of Cook county denying appellant a mechanic's lien against the property of appellee, the Berkshire Warehouse Company, and dismissing the intervening petition of appellant for want of equity.

In July, 1909, appellee made a contract with Hilger & Co., a general contractor in Chicago, to construct certain improvements for $75,000 on the premises owned by appellee. Work was begun under this contract July 8, 1909, and continued, various sub-contractors furnishing labor and material. Hilger & Co. was paid by appellee on this contract on August 9, 1909, $2500, August 20, $2500, and September 4, $5000, without requiring, at the time these payments were made, statements to be furnished by Hilger & Co., as provided by section 5 of the Mechanic's Lien law of 1903. August 16, 1909, appellant entered into an agreement with Hilger & Co. to furnish lumber and building material for use in the erection of the improvement on said premises, no particular quantity being ordered at that time and no definite price being fixed therefor, except that the orders were to be given from time to time as the materials were needed, at the then market price. September 28, 1909, appellee received from Hilger & Co. a sworn

statement in accordance with said section 5 of the Mechanic's Lien law, and thereafter, under this statement, paid $17,000. On October 22 Hilger & Co. furnished another sworn statement, under which it was paid $15,000; and on November 16 it made another statement, as required by the Mechanic's Lien act, under which it was paid, November 18, $16,000. The name of appellant did not appear on either of these three statements as furnishing material or doing work on the contract. The total cost of the building, as per original contract, was $75,000, plus $10,000 allowed by the architect for extras. When the $16,000 was paid, under the November 16 statement, to Hilger & Co. it had received on the contract $58,000, leaving in the hands of appellee, still unpaid under the contract, $27,000. In said statement of November 16, 1909, it was set forth that there was due or to become due and owing for material and labor to contractors a balance of $23,874.08. Hilger & Co. did not complete the contract but it was completed by appellee. As that, however, has no bearing on the question here involved the details need not be discussed.

Counsel for appellant argue that the payments of August 9, August 20 and September 4, aggregating $10,000, having been made without complying with the provisions of the Mechanic's Lien law as to statements, were wrongfully paid, and that therefore appellant is entitled to a mechanic's lien on the premises for the amount of its claim; while counsel for the appellee argue that no statements on the above mentioned dates could have properly been made which showed any amount due appellant, as at the time of the first payment no contract had been entered into between Hilger & Co. and appellant and no definite amounts were due or to become due at the time of the last mentioned payments. When statements were made by the contractor on September 28, October 22 and November 16 the owner retained sufficient funds to pay all sub-contractors mentioned in those statements. It is conceded by counsel

268 — 30

for appellee that the warehouse company should have required a statement to be made before paying out these three sums in question, but counsel argue that appellant was in no way injured.

The principal question requiring our consideration is whether the failure to make the statements required by the statute, before the said payments of August 9 and 20 and September 4 were made, renders the property of appellee subject to a mechanic's lien up to $10,000,—the amount of those payments. Counsel for appellant argue that appellee not having required Hilger & Co. to comply with the statute before these payments were made, this violation of the statute cannot subsequently be corrected by any act of appellee or the contractor, or both,—and this, as we understand the argument, regardless of the consequences to the contractor or sub-contractor. This precise question has never been before us for consideration or decision. Decisions by other courts in this State, or courts in other States, necessarily are not controlling and need not be considered in discussing the proper construction of this statute.

Section 5 of the statute provides that the contractor shall give the owner, and the owner shall require before paying to said contractor or his order any money, a written statement under oath, giving "the names of all parties furnishing materials and labor, and of the amounts due or to become due each." (Hurd's Stat. 1913, p. 1561.) Section 22 provides for the giving to the owner or contractor of a statement by the sub-contractor of the labor or material furnished by him. Section 24 states how a sub-contractor or party furnishing labor or material may cause written notice of his claim and the amount due to be served on the owner or his representative, "provided, such notice shall not be necessary when the sworn statement of the contractor or sub-contractor provided for herein shall serve to give the owner notice of the amount due and to whom due, but where such statement is incorrect as to the amount,

the sub-contractor or material-man named shall be protected to the extent of the amount named therein as due or to become due to him," etc.   Section 32 provides that no payments by the owner shall be regarded as rightfully made, as against the sub-contractor, laborer or party furnishing labor or materials, if made by the owner without exercising and enforcing the rights conferred upon him in sections 5 and 22.   While there are other provisions of the statute which show the general plan and intention of the legislature, these are the chief sections that bear on the question here under consideration.

Under a mechanic's lien statute very similar in its provisions to the ones heretofore quoted, this court held in *Keeley Brewing Co.* v. *Decorating Co.* 194 Ill. 580, that the lien of á sub-contractor being a direct lien, its existence did not depend upon the existence or non-existence of a contractor's lien, but that the notice by the sub-contractor under section 25 was not necessary where the sworn statement óf the contractor made under section 5 gave the owner notice of the amount due or to become due.   Practically to the same effect, under an earlier mechanic's lien statute containing practically the same provisions, was the holding of this court in *Shaw* v. *Chicago Sash, Door and Blind Co.* 144 Ill. 520.   In the recent decision of *Knickerbocker Ice Co.* v. *Halsey Bros. Co.* 262 Ill. 241, this court, in construing said section 5 of the Mechanic's Lien statute, held that said section did not limit a contractor to one sworn statement to be made to the owner; that the conditions of the contract may change between the time of payments; that "new sub-contracts may have been entered into in the meantime or payments may have been made upon sub-contracts existing at the time the first payment was made.   In order to be apprised of the exact situation at the time any payment is demanded by and made to the contractor, whether it be the first payment made under the contract or any subsequent payment, the owner is entitled,

under said section 5, to require, and it is the duty of the contractor to make, a statement showing the situation as it then exists. If any sub-contractor is not satisfied to rely upon the contractor in the making of these statements and to abide by the statements as made, it is his privilege, under the statute, to serve an independent notice upon the owner, of the amount due or to become due under his sub-contract, which shall bind the owner notwithstanding any statement made by the contractor." The opinion further holds that in the absence of a notice by the sub-contractor the owner has a right to rely upon the sworn statement of the contractor unless he knows from other sources that such statement is false.

This statute should receive a reasonable construction. This court said in *Shaw* v. *Chicago Sash, Door and Blind Co. supra,* on page 530, that "to say that a right claimed under such statute is uncertain is substantially tantamount to saying that it does not exist;" that the statute, being in derogation of common right, should be construed strictly in relation to mechanics' liens. A reading of the sections of this statute to which we have referred shows clearly that it was intended that the owner should be protected if he used reasonable precautions in following the statutory provisions; that if the contractor's affidavit was in the form required by the statute, even though it was false, the owner was protected, as against sub-contractors, if he had no knowledge or notice of the falsity of the contractor's statement. Manifestly, the statute intended that if the sub-contractor wanted to be sure that his claim was protected he himself could give the notice of his claim and not rely either upon the contractor or the owner to protect him. It would be a most unreasonable construction of this statute to hold that if any mistake as to following the technical provisions of the statute were made by the owner before paying out money he could never after protect himself against such mistake in future payments in the subsequent

statements required of the contractor. The reasoning of this court in *Knickerbocker Ice Co.* v. *Halsey Bros. Co. supra,* is not in harmony with any such construction of this statute. The benefit of requiring statements from the contractor from time to time, as the conditions of the work changed, would be practically nullified by upholding the contention of counsel for appellant on this question.

On November 16, 1909, the last time a statement by Hilger & Co. was filed in accordance with the requirements of section 5 of this statute, appellee had on hand ample funds to pay the claim of the appellant. That statement showed that there was due and owing contractors and material-men $23,874.08, and the record shows appellee still owed on the contract approximately $27,000. Appellant's claim amounts to only $857.57, and it could have protected that claim by filing notice, as the statute provided, before this money was paid out, but it did not serve such notice until January 20, 1910, at which time, under said statement of November 16, 1909, the appellee had paid out the money to the contractor and sub-contractors. At the time of the first payment here in question, August 9, 1909, there was no money due or owing to appellant. Neither would it have been possible to figure out at the date of the payments on August 20 and September 4 what was due or to become due appellant, as the record does not show that it had delivered any material previous to either of those dates. Indeed, had statements been required on those dates and had appellant's claim been referred to in any way on such statements it would not have protected appellant's claim in any manner, in view of the fact that the subsequent statements made in conformity with the statute, September 28 and November 16, did not contain any reference to the claim. Appellee had a right to rely on those statements. Obviously, appellant was not injured in any way by the failure of the appellee to require the filing of statements before making the payments of August 9, August 20

and September 4, respectively. The Appellate and trial courts properly construed the statute on the question here under consideration.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*