The Decatur Bridge Company v. Joseph H. Standart, Trustee for Oglesby Fraternity Building Association et al., Appellees. H. W. Johns-Manville Company, Appellant.

## Gen. No. 6,464.

1. MECHANICS' LIENS, § 1*—*what is effect of doing work or furnishing of materials on a building.* The doing of work or furnishing of materials on a building gives merely an inchoate lien or right to acquire a lien, and the statute prescribes the steps to be taken to perfect this lien.

2. MECHANICS' LIENS, § 5*—*how statutes relating to are to be construed.* A mechanic's or materialman's lien is a secret one, existing only by statutes which are in derogation of the common law and opposed to common right and to be construed strictly.

3. MECHANICS' LIENS, § 158*—*cumulative remedies.* A mechanic's or materialman's lien is a cumulative remedy, the denial of which does not deprive a party of the right to a recovery on his contract in the usual way.

4. MECHANICS' LIENS, § 152*—*what does not operate to extend time for filing petition by subcontractor to enforce lien.* Orders from the owners of a building to a subcontractor for items, charged to the owners, not for repair work done in connection with their original contract with the contractor, did not extend the time for filing a petition under the Mechanics' Liens Act by the subcontractor to enforce a lien for other items furnished under the original contract with the contractor, which had expired, notwithstanding the owners had declared a default of the contractor in the meantime and themselves completed the work.

5. MECHANICS' LIENS, § 89*—*what is effect of failure of owner to require statement of contractor before making of payment.* The failure of the owner of a building to require from a contractor the statement provided for in section 5 of the Mechanics' Liens Act (J. & A. ¶ 7143), before making any payment to a contractor, does not bar the owner from asserting that he was compelled to pay more than the contract price to complete the work as a defense to a subcontractor's claim, where the contractor's statements were subsequently required and received.

6. MECHANICS' LIENS, § 1*—*what is not basis for lien.* The right to a lien under the Mechanics' Liens Act cannot be made to depend

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

alone upon the omission of the owner to do or perform the duty imposed upon him by statute.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed October 16, 1917.

L. W. BREWER, for appellant.

CLARENCE GRIGGS and KELLY, HALE, DAMMANN & COOLIDGE, for appellees; J. F. DAMMANN, JR., of counsel.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In September, 1913, the owners of adjacent lots entered into contracts with one Edmondson for the erection of a joint building upon which work was commenced within a short time thereafter. Edmondson afterwards contracted with appellant to furnish material for the roof of the joint building, and later for additional material. Appellant also made repairs to the same roof, caused by a storm; and its last item under its contracts and for such repairs was furnished May 25, 1914.

As the work progressed, payments were made by the owners to Edmondson at first without receiving or requiring the statements of the contractor contemplated by statute; but, at the time of making each of these payments, there was enough money left of the contract price in the owner's hands to meet the demands of all subcontractors, as was shown in subsequent statements. The owners made payments afterwards, after requiring the statements from the contractor, showing the demand of appellant, at what it then was; and finally made one payment considerably more in amount than they should have made, in view of these statements.

Edmondson, in the spring of 1914, became involved financially and was unable to go on with his contracts; and the owners on May 26, 1914, through their architects, sent notices to the creditors and subcontractors of a meeting to be held May 29, 1914; and for each subcontractor to present his written claims. Appellant did not attend the meeting, but presented its sworn statement of claim against Edmondson for $816.37. The owners declared a default against the contractor about June 1, 1914, and then completed the building at a necessary cost of considerably more than the original contract price.

The appellant at the request of the owners furnished material and labor on June 11, 1914, and again on October 14, 1914, for which it presented bills to the owners, and not to the contractors; and these bills were not for repair work done under its original contract with Edmondson.

A bill to foreclose a mechanic's lien was filed against the owners and other creditors, including appellant, and on October 27, 1914, appellant filed its answer to the bill; also an intervening petition, alleging there was due it $816.37, and praying for a lien for such sum. The cause was referred to the master in chancery to take proofs and report the same, together with his conclusions thereon. After a portion of the testimony had been taken, the appellant on October 9, 1916, obtained leave to and filed an amended answer and intervening petition, averring that on June 11 and October 14, 1914, at the instance and request of the owners, it had supplied and applied on said buildings extra material and labor amounting to $49.13, making a total due it of $968.99, for which it was entitled to a lien.

The master in his report found that the total amount of appellant's claim was $816.37 as originally presented, and was due from Edmondson May 28, 1914;

that the payments by the owners to the contractor were regular and complied with the Mechanics' Liens Act, and that the two items of June 11 and October 14, 1914, were no part of the contract between appellant and Edmondson; that the intervening petition having been filed more than 4 months after the final payment became due, the appellant had not established its lien against the premises; and that the petition should be dismissed at the cost of the petitioner; and a decree was entered approving the master's report and dismissing appellant's petition, from which this appeal is prosecuted.

The appellant seeks to reverse this decree, and contends that the 4 months' period, in which to commence suit to enforce lien, was extended by furnishing the two items of work and material at the request of the owners June 11 and October 14, 1914, and that the limitation period should be computed from October 14, 1914.

The doing of work or furnishing of materials gives merely an inchoate lien or right to acquire a lien, and the statute prescribes the steps to be taken to perfect the lien.

The Mechanics' Liens Act provides for two classes of liens, one to contractors and one as to subcontractors and materialmen, with two distinct methods of enforcing these liens. A contractor is defined in section 1 (J. & A. ¶ 7139) as any one contracting directly with the owner or his agent, while a subcontractor is defined in section 21 (J. & A. ¶ 7159) to be a person who shall furnish materials, services or labor for the contractor. Section 33 (J. & A. ¶ 7171) provides that petition shall be filed or suit commenced to enforce the lien created by sections 21 and 22 (J. & A. ¶¶ 7159, 7160) of the Act within 4 months after the time that the final payment is due the subcontractor or laborer, or the party furnishing material.

The Supreme Court has emphasized the doctrine that a mechanic's or materialman's lien is a secret one, existing only by statutes which are in derogation of the common law, and opposed to common law, and opposed to common right, and therefore are always to be construed strictly. The lien is a cumulative remedy, and to deny it does not deprive a party of the right to a recovery upon his contract in the usual way. (*M. Pugh Co. v. Wallace,* 198 Ill. 430; *Joseph N. Eisendrath Co. v. Gebhardt,* 222 Ill. 114.)

In *Galloy v. Sparrow,* 166 Ill. App. 200, the court holds concerning the same point here involved that:

"Section 9 of the Mechanics' Liens Act, hereinbefore described, provides that original contractors. may, within 2 years after the completion of the contract, file a bill to enforce a lien. * * * A further provision is that 'such suit shall be commenced *or answer filed* within 2 years after the completion of the contract.' .

"Section 28 of the same Act provides that a subcontractor, such as the appellant, 'may file his petition and enforce his lien as hereinbefore provided for the contractor in sections 9 to 20, inclusive, of this Act, except as to the time within which suit shall be brought.' And section 33, as before indicated, makes that time '4 months after the time that the final payment is due the subcontractor.' "

There is no dispute about the fact that appellant failed to file its petition to enforce the lien claimed, within 4 months from the date of the last delivery of material and labor to the contractor, which was May 25, 1914; but it contends that inasmuch as the owners declared a default as to the general contractor, and thereafter undertook to and did complete the building themselves, and that afterwards, on June 11 and October 14, 1914, the appellee had, through the chairman of its building committee, ordered other work and materials from appellant, such orders in legal effect con-

stituted additional and extra material and labor, within the meaning of the statute; and extended the time limit for the commencement of its action to enforce its lien.

It is true, where work or material is, in good faith, furnished at the request and with the knowledge of the owner, to remedy defects in the original work, and not done for the purpose of reviving a lien which had been lost, that this is sufficient to establish a new period from which the time for filing notice or claim of a lien is to be computed. (*St. Louis Nat. Stock Yards v. O'Reilly,* 85 Ill. 554.)

But the proof here shows that the two items were furnished at the request of the owners, and charged to the owners, and bills for the same were presented by appellant to the owners; and that they were not for repair work done in connection with its original contract of the contractor.

It is urged by appellant that the owners having failed to require from the contractor the statement provided for in section 5 of the Mechanics' Liens Act (J. & A. ¶ 7143), before making any payments to the contractor, that they were barred thereafter from asserting that they had been compelled to pay more than the original contract price to complete the work, as a defense to the claim for lien of the appellant, even though they did require and receive the contractor's statements subsequent thereto.

This point has been decided adversely to appellant's contention by the Supreme Court recently in the case of *Knickerbocker Ice Co. v. Halsey Bros. Co.,* 262 Ill. 241. The court there says:

"Appellant contends that this section contemplates but one sworn statement to be given the owner by the contractor, and that after this statement has been given, the owner must at all times, at his peril, retain a sufficient sum to pay all subcontractors the amounts shown by such statement to be due and to become due.

Appellee, on the other hand, contends, and the Superior and Appellate Courts have held, that this section authorizes the owner to make payments to the contractor, from time to time, upon sworn statements being furnished by the contractor showing the amounts due and to become due subcontractors, and that the owner will be protected in making payments to the contractor upon such statements unless he has notice that the statements are false. The contention of appellant cannot be sustained. Said section 5 does not expressly limit a contractor to one sworn statement to be made to the owner; and from a consideration of the various provisions of the whole act, such a construction cannot fairly be given to this section. When a contractor makes his sworn statement, either voluntarily or at the request of the owner, at the time the first payment is due under his contract, he makes it in accordance with the conditions as they then exist. Those conditions may change before a second payment becomes due.''

In the case of *Berkshire Warehouse Co. v. Hilger & Co.,* 268 Ill. 463, the facts are very similar to the case at bar. It was there urged that the violation of the statute by the making of payments without requiring the statement of the contractor cannot subsequently be corrected by any act of the owner, but the court held that:

''It would be a most unreasonable construction of this statute to hold that if any mistake as to following the technical provisions of the statute were made by the owner before paying out money he could never after protect himself against such mistake in future payments in the subsequent statements required of the contractor. The reasoning of this court in *Knickerbocker Ice Co. v. Halsey Bros. Co., supra,* is not in harmony with any such construction of this statute. The benefit of requiring statements from the contractor from time to time, as the conditions of the work

changed, would be practically nullified by upholding the contention of counsel for appellant on this question.''

Upon the abandonment of the contract by Edmondson, the contractor, the owners completed the buildings according to the contract, and in so doing expended more money than would have been in their hands if they had complied strictly with the statute as to statements, and were compelled to spend considerably more than the original contract price.

Section 21 (J. & A. ¶ 7159) provides that in no case shall the owner be compelled to pay a greater sum for or on account of the completion of such building than the price or sum stipulated in the original contract, unless payment be made to the contractor in violation of the rights and interests of the persons intended to be benefited by this act. In the early case of *Biggs v. Clapp,* 74 Ill. 335, a similar provision of the statute was construed in this way:

''The language of the statute is obvious. In no case shall the owner be required to pay for or on account of such building a greater sum than the original contract price.

''In this case appellees have been compelled, in the completion of their building, to pay between $500 and $1,000 more than the original contract price, and yet appellants insist they shall still pay more.

''The position assumed is not just, neither can it be sustained under a fair construction of the statute.''

The right to a lien cannot be made to depend alone upon the omission of the owner to do or perform the duty imposed upon him by statute. (*Brennan v. William P. McEvoy & Co.,* 196 Ill. App. 336.) The sections of the statute referred to relate in no way to the provisions as to limitations in other sections, upon which the rights of subcontractors to a lien depend.

We are of opinion that there was no error in dis-

missing appellant's petition, and the decree is affirmed.

*Affirmed.*