CONTRACTORS' READY-MIX, INC., Plaintiff-Appellee, v. EARL GIVEN CONSTRUCTION COMPANY, INC., *et al.*, Defendants-Appellants.

Fourth District No. 4—92—0282

Opinion filed February 18, 1993.—Modified on denial of rehearing April 14, 1993.

COOK, J., specially concurring.

The Leiter Group, of Peoria (William C. Connor, of counsel), for appellant Earl Given Construction Company, Inc.

Brent H. Gwillim, of Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, of counsel), for appellant First Midwest Bank.

Mohan, Alewelt, Prillaman & Adami, of Springfield (Cheryl Stickel Neal, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

On April 1, 1991, plaintiff Contractors' Ready-Mix, Inc. (Ready-Mix), filed suit in the circuit court of Logan County against Earl Given Construction Company, Inc. (Given), First Midwest Bank/Western Illinois, N.A./Lincoln, as trustee of a certain land trust (owner), Guardian Life Insurance Company of America (INA), and unknown owners and nonrecord claimants. Count I was against all defendants seeking foreclosure of a mechanic's lien for materials furnished by Ready-Mix to Given, a general contractor on a project to erect a Wal-Mart store on premises of the owner at Lincoln. INA was alleged to be a mortgagee of those premises. Count II was solely against Given and sought a money judgment against Given for the amount unpaid for the furnishing of those materials.

Ready-Mix, the supplier of materials to Given, filed a motion for summary judgment as to both counts. The owner moved for summary judgment as to count I. On March 15, 1992, the circuit court denied the owner's amended motion for summary judgment and entered a joint and several summary judgment in favor of Ready-Mix against both defendants as to count I providing for foreclosure upon and sale of the premises to satisfy a mechanic's lien against the premises in the sum of $108,450.59, which included attorney fees and court costs. Section 28 of the Act requires that when a subcontractor or supplier of materials sues to foreclose a mechanic's lien, both the owner and general contractor must be made parties and are jointly and severally liable. Ill. Rev. Stat. 1989, ch. 82, par. 28.

This judgment did not rule upon count II. The court made a finding that no just reason existed to delay enforcement or appeal of the judgment upon count I. (134 Ill. 2d R. 304(a).) The owner and Given have appealed. We reverse the summary judgment in favor of Ready-Mix and remand for further proceedings.

■ A brief summary of various provisions of the Act is necessary to an understanding of the facts. Section 21 of the Act (Ill. Rev. Stat.

1989, ch. 82, par. 21) provides for a lien for subcontractors and suppliers of material for the unpaid amount of the value which they have furnished to the premises. That section also states that an owner shall not "be compelled to pay a greater sum for or on account of the completion of *** [an] improvement than the [contract price], unless payment be made to the contractor *** in violation of the rights and interests of the persons intended to be benefited by this [A]ct" (Ill. Rev. Stat. 1989, ch. 82, par. 21). Section 32 of the Act similarly states:

> "No payments to the contractor or to his order of any money or other considerations due or to become due to the contractor shall be regarded as rightfully made, as against the sub-contractor, laborer, or party furnishing labor or materials, if made by the owner without exercising and enforcing the rights and powers conferred upon him in sections 5, 21 and 22 of this act." (Ill. Rev. Stat. 1989, ch. 82, par. 32.)

Section 27 of the Act provides that when an "owner or his agent is notified as provided in [the Act], he shall retain" from money to be paid the contractor enough to pay the subcontractor, supplier or worker to whom money is due. Ill. Rev. Stat. 1989, ch. 82, par. 27.

Section 5 of the Act provides that before an owner makes payments to a contractor, the owner shall require the contractor to give the owner an affidavit setting forth "the names and addresses of all parties furnishing materials and labor, and of the amounts *due or to become due* [to] each." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 82, par. 5.) Section 24 of the Act states that subcontractors, including those furnishing materials, "may at any time after making his or her contract with the contractor, and *shall* within 90 days after the completion thereof *** cause a written notice of his or her claim and the amount due or to become due thereunder, to be sent" in certain ways to the owner or its contractor. (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 82, par. 24.) We will discuss section 22 of the Act (Ill. Rev. Stat. 1989, ch. 82, par. 22) later.

The owner does not dispute the sufficiency of the record to support a summary judgment for Ready-Mix as long as that judgment is in the sum of $127.25 plus a reasonable amount for costs and attorney fees. The owner maintains it complied with all the pertinent statutory provisions which would absolve it of liability except that arising from a section 5 affidavit of Given in regard to amounts due to Ready-Mix which indicates $127.25 was due or would become due to Ready-Mix to complete the contract. Ready-Mix's position is twofold. It first maintains that the owner did not take sufficient statutorily required steps to prevent its being required to pay sums over and above the

contract price in the amount awarded by the trial court. Second, Ready-Mix asserts that if both parties met in full the requirements of the Act in order to protect themselves, the intent of the Act and the equities are with it. The circuit court's decision was based on the latter contention of Ready-Mix. Given objects only to the amount of fees awarded Ready-Mix.

Summary judgment is permissible only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show" all material elements of fact are conclusively shown to exist in favor of the party seeking summary judgment. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) The facts shown of record arise mostly from uncontested affidavits. The significant events begin with a contract being entered into between the owner and Given sometime prior to June 30, 1990, for erection of the Wal-Mart store on the owner's premises. Given then entered into an oral contract with Ready-Mix to provide concrete materials for the project as required by Given. Given agreed to pay Ready-Mix a reasonable price, finance charges of 2% per month on all balances remaining unpaid for more than 30 days, and attorney fees or costs of collection on the account. Ready-Mix received two payments from Given of $62,888.12 and $83,465.75, respectively, for materials delivered through September 14, 1990.

Ready-Mix did not receive payment of $77,102.77 for materials delivered September 14, 1990, through October 27, 1990, its last date of performance. Ready-Mix submitted monthly statements to Given indicating the amount unpaid plus finance charges. On October 25, 1990, Given served the owner with a document purporting to be a waiver of Given's lien for $280,800 worth of work which Given had completed to that date. The lower portion of the document was an affidavit on behalf of Given, listing the sum of $127.25 as the amount due Ready-Mix. The affidavit stated "the items mentioned include all labor and material required to *complete said work* according to plans and specifications" (emphasis added). This affidavit met the requirements of section 5 of the Act.

Given's section 5 affidavit also stated that the then balance on its contract with the owner was $308,800. On November 2, 1990, the owner paid Given $280,800, leaving $28,000 remaining on the total contract price. On November 22, 1990, the subject property was apparently sold, and the purchaser apparently paid Given $60,290 on November 30, 1990. An affidavit attached to the owner's revised motion for summary judgment indicates that the $60,290 payment was intended to include the $28,000 due on the original contract for construction. On January 25, 1991, which was 90 days after Ready-Mix's

last delivery of materials to the construction site, Ready-Mix mailed its notice of mechanic's lien to the owner as required by section 24 of the Act.

The owner does not dispute that the record shows Ready-Mix has done everything required to perfect a mechanic's lien in substantially the amount awarded if the owner has not complied with the various statutory provisions necessary to protect it from having to pay money over and above the contract price. The owner maintains, however, that it has complied with all of those provisions except that it should have withheld $127.25 from the amount paid Given in order for that sum to be available to pay Ready-Mix. Ready-Mix disputes this contention and also maintains that even if that is so, the interests of the parties should be balanced in a way that would support the trial court's decision. We begin our analysis by examining the owner's compliance with the various statutory provisions.

■ We consider first the owner's compliance with section 5 of the Act. Ready-Mix points out that the lien waiver on the same form as the affidavit was headed by the words "WAIVER OF LIEN TO DATE" in large letters while the designation of the section 5 affidavit as "CONTRACTOR'S AFFIDAVIT" was in somewhat smaller letters. Ready-Mix contends the owner should have understood that the affidavit was intended to refer, in regard to Ready-Mix, only to the amount owed up to that date. Ready-Mix also points out that it furnished over 57 cubic yards of concrete to the project two days after Given executed the section 5 affidavit. We do not agree that the owner was required to make any assumptions which were contrary to the wording of the affidavit because of the wording of the lien waiver. The record does not indicate that the owner knew of the furnishing of the additional concrete when it made payment to Given a few days later.

The portion of the October 25, 1990, document, which was described as a waiver, acknowledged payment by the owner to Given of the sum of $280,800 which, according to the undisputed record, left the sum of $28,000 of the contract price remaining to be paid. The record shows that the $280,800 payment was actually made on November 2, 1990. The final payment of $28,000 was made by the owner to Given on November 30, 1990. Ready-Mix makes no contention that the owner was required to obtain an additional section 5 affidavit before making the $28,000 payment. Where, as here, a prior section 5 affidavit of the contractor had stated that "the items mentioned [in that affidavit] include all labor and material required to *complete said work*," no further section 5 affidavit was required to justify payment

by the owner to the contractor. (Emphasis added.) See *Berkshire Warehouse Co. v. Hilger & Co.* (1915), 268 Ill. 463, 469, 109 N.E. 287, 289; *Sanaghan v. Lawndale National Bank* (1967), 90 Ill. App. 2d 254, 259, 232 N.E.2d 546, 549.

We hold that, except for the owner's failure to withhold $127.25 from the sum which it paid Given on November 2, 1990, the owner complied with the requirements of section 5 of the Act when the owner obtained Given's section 5 affidavit on October 25, 1990, and then paid Given $280,800 on November 2, 1990.

Ready-Mix makes no contention that section 21 of the Act is, of itself, dispositive of its claim. It points out that section 21 does state that payment by owners to general contractors made in violation of section 5 or 24 of the Act are wrongfully made. Suggestion has been made that one of the powers which the owner had under sections 5 and 21 of the Act, which section 32 of the Act required the owner to exercise before making payment to Given, was to require lien waivers from Ready-Mix. If this was done, Ready-Mix would likely have required the owner to hold back sufficient money to protect its claim before executing the waiver. However, the only reference in section 21 of the Act to lien waivers concerns the use of lien waivers in regard to improvement to the owner-occupied residence lived in by a single family.

Ready-Mix does contend that section 22 of the Act directly supports its position. It relies upon the portion of section 22 which states as follows:

> "When the contractor shall sub-let his contract or a specific portion thereof to a sub-contractor, the party furnishing material to or performing labor *for such sub-contractor* shall have a lien therefor; and may enforce his lien in the same manner as is herein provided for the enforcement of liens by sub-contractors. Any sub-contractor shall, as often *as requested in writing by the owner*, or contractor, or the agent of either, make out and give to such owner, contractor or agent, a statement of the *persons furnishing material and labor*, giving their names and how much, if anything, is due or to become due to each of them, and which statement shall be made under oath if required." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 82, par. 22.

Ready-Mix points out that section 32 of the Act requires owners to exercise their rights under section 22 before making payments to contractors in order to make those payments properly. Ready-Mix maintains that the previously recited provision from section 22 au-

thorized the owner to require Ready-Mix to give it a statement of the amount owed Ready-Mix by Given. This contention does not properly interpret the language of section 22. That section concerns the liens of those furnishing labor and materials to *subcontractors*. Here, Ready-Mix was furnishing materials for the general contractor, Given. The request which section 22 permits owners to make of the contractors, subcontractors and suppliers of material concerns the amount owed by those entities to their suppliers and sub-subcontractors and not the amount owed by the general contractor to those entities. The purpose of section 22 is to give those furnishing labor and materials to subcontractors the same protection that subcontractors and those furnishing materials directly to the general contractor have under section 5 of the Act.

The other specific section of the Act upon which Ready-Mix relies directly is section 24. As we have indicated, it states that one furnishing labor or materials to a contractor "may at any time after making [a] contract with the contractor, and *shall* within 90 days after the completion thereof" give a notice, in a manner described therein, to the owner as to the amount due or to become thereunder and to whom it is due. (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 82, par. 24.) Section 27 of the Act then requires an owner receiving such a notice to "retain from any money due or to become due the contractor" amounts sufficient to pay the amounts due to those furnishing labor or materials. (Ill. Rev. Stat. 1989, ch. 82, par. 27.) Ready-Mix seemingly asserts that by giving the owner section 24 notice on January 29, 1991, at the last part of the 90-day period, this notice rendered the owner's previous payments to Given on November 2, 1990, wrongful.

Ready-Mix's theory of the effect of a section 24 notice given any time before the end of the 90-day period is not supported by any precedent and was rejected in *Sanaghan*, where the court stated:

> "If security in the payment could not be obtained until the expiration of the 60-day period [the then-existing statutory provision], it is difficult to see how the financing of such construction could be had. It is common knowledge that the construction industry operates on credit, and this was understood by those who prepared and enacted the Mechanics' Lien Act." (*Sanaghan*, 90 Ill. App. 2d at 262, 232 N.E.2d at 551.)

We agree with the logic of *Sanaghan* and its interpretation of the operation of section 24. Ready-Mix relies upon *McCann Construc-*

*tion Specialties Co. v. Alan Construction Co.* (1973), 12 Ill. App. 3d 206, 298 N.E.2d 222. Some language there would seem friendly to the theory that a material supplier or subcontractor can preserve a lien by a timely section 24 statement, even though the owner has made prior payment to the contractor based upon a faulty section 5 affidavit. However, in *McCann* the lien was sought only to the extent of sums which were being *retained* by the owner.

The *Sanaghan* interpretation of section 24 of the Act is consistent with provisions of sections 21 and 27 of the Act. Section 21 lists as a circumstance where an owner's payment to the contractor is wrongful, the situation where a section 24 notice is given showing sums due and "thereafter" subcontracting work is done or material furnished for sums set forth in the notice and payment is made to the contractor. Section 27 of the Act requires an owner to retain money due a contractor to the extent he or she is *"notified as provided in [the Act]."* (Emphasis added.) Ill. Rev. Stat. 1989, ch. 82, par. 27.

■■ We hold that Ready-Mix's section 24 notice to the owners did not render wrongful payments made by the owner to Given prior to the owner's receipt of that notice. Ready-Mix maintains that the owner had actual notice of amounts owed by Given to Ready-Mix well before the section 24 notice was given. This arises from an affidavit furnished by Ready-Mix concerning information furnished to Jeff Eirenberg, purportedly an agent of the owner. However, nothing in the affidavit indicates Eirenberg was contacted until January 4, 1991, which was more than a month after the owner's last payment on the contract price.

In rendering its decision the circuit court stated:

"Under the special set of circumstances presented here, this Court is drawn to the conclusion that Plaintiff's claim for judgment is more meritorious. Did the owner use 'reasonable precautions'? Did the owner have notice 'from any source'? In whose favor should the balance of hardships lie? This Court does not believe [the] owner used reasonable precautions. [The] owner knew from prior payments that Plaintiff was a major sub-contractor. That would seem to obviate the argument that Plaintiff could have served some sort of written notice at anytime after the Plaintiff became involved in the project. This Court believes [the] [o]wner had notice as well from an unpaid balance listed on the 10—25—90 Section 5 Affidavit. This Court is of the opinion that, on a project of this size, it would have been prudent for [the] owner to exercise

its rights under Section 22 to request a lien waiver from this major subcontractor; notice and knowledge of its existence can certainly be imputed to the owner. Therefore, under Plaintiff's theory, the alleged final payment was not 'rightfully made' pursuant to Section 32. Further, reading the various sections as applied to the unique circumstances involved here, and considering the conflicting policy statements re[:] owners, contractors and subs, the balance of the hardships is tipped here in favor of the Plaintiff. Again, this Court believes, under these circumstances, that it was unreasonable for [the] owner to rely solely on the 10—25—90 Section 5 Affidavit.''

We do not agree with the portion of the circuit court's analysis which indicates that section 22 of the Act authorizes an owner to require a lien waiver from any party. As we have indicated, we conclude that section 22 does not even authorize an owner to require a statement from a material supplier of the amount owed it by the contractor. Nevertheless, we recognize a well-established practice whereby prudent owners and contractors often demand lien waivers to support their payments to persons entitled to them. In any event, we deem the court's analysis is a very conscientious attempt to be fair to the parties by some sort of balancing of the equities. Ready-Mix urges us to uphold this determination.

■ In maintaining that the circuit court properly balanced the interests of the parties here, Ready-Mix relies upon general language in *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 454 N.E.2d 314. In that case, the supreme court upheld against the mortgagee of four apartment buildings the mechanic's lien claim of one who had furnished carpentry in all four apartment buildings. The issue presented was whether the lien claimant's claim met the requirements of section 7 of the Act (see Ill. Rev. Stat. 1979, ch. 82, par. 7) when a single claim was filed for the four properties. In holding that a requirement that separate claims should have been filed was unreasonable, the court stated:

"Once the contractor has complied with the statutory prerequisites, however, the Mechanics' Liens Act should be liberally construed in order to carry out its remedial purpose. (Ill. Rev. Stat. 1979, ch. 82, par. 39.) This court has recognized that the purpose of the Act 'is to permit a lien upon premises where a benefit has been received by the owner and where the value or condition of the property has been increased or improved by reason of the furnishing of labor and materials.'

*Colp v. First Baptist Church* (1930), 341 Ill. 73, 76-77[, 173 N.E. 67, 68]." *Connelly*, 97 Ill. 2d at 246, 454 N.E.2d at 316.

■ Ready-Mix maintains the owner had actual notice of Given's substituted debt for material furnished for the premises when the owner made final payments to Given. We have determined the record does not establish this. The circuit court correctly pointed out that the owner could have been more prudent in making its payments but we do not deem that significant. Here, unlike in *Connelly* and *Colp v. First Baptist Church* (1930), 341 Ill. 73, 173 N.E. 67, the issue is to determine the rights between an owner and a supplier to the contractor, both of whom have complied with statutory requirements. Section 21 provides that an owner shall not be required to pay more than the contract price when it does not make wrongful payments to the contractor. No similar provision of the Act says that the subcontractor or supplier who follows the Act is necessarily entitled to a lien. Rather, section 21 of the Act states that the rights of the subcontractor and supplier are subject to the provisions of section 5 of the Act.

Accordingly, we hold that despite general language in *Connelly* and *Colp* and, no doubt, in other cases, where both an owner and a subcontractor or supplier to the general contractor have both followed statutory requirements, the owner is protected against a lien for amounts unpaid by the contractor to the subcontractor or supplier. Where, as here, the owner has made some wrongful payments, the subcontractor or supplier is entitled to a mechanic's lien to the extent of those payments. Here, the owner wrongfully paid out the sum of $127.25 and Ready-Mix is entitled to a mechanic's lien but only to that extent.

■ Given directs most of its argument to upholding the lien awarded Ready-Mix. However, it asks reversal of the judgment to the extent of the amount of attorney fees awarded. It contends a portion of the fees were awarded for Ready-Mix's defense of a separate case between it and Given. Whatever the rights of Ready-Mix are for attorney fees between itself and Given in regard to other litigation, no matter how related to that here, we do not deem this fee to be one which can be properly added to a claim against the owner for a mechanic's lien. Given also complains about the hearsay nature of an affidavit in support of its fee. As the case must be remanded for further proceedings, we need not decide this question.

Accordingly, we reverse the summary judgment in favor of Ready-Mix and remand for further proceedings. We could reduce the judgment to the sum of $127.25 together with attorney **fees and**

costs and then order foreclosure and sale but Ready-Mix correctly points out that this would be unfair to it. Such a ruling would be nearly the same as a summary judgment for owner, which was refused by the circuit court.

Reversed and remanded.

STEIGMANN, P.J., concurs.

JUSTICE COOK, specially concurring:
I agree with the decision to affirm in part, reverse in part, and remand with instructions, and basically agree with what is said in the majority opinion.

The Act attempts to balance rights and duties of owners, subcontractors (materialmen), and others. On some projects the parties are careful to fully exercise their rights under the Act; on other projects they are not. The Act seeks a fair result in each case. Losses are not always placed on owners, nor are they always placed on subcontractors. There are steps which an owner may take under the Act to protect itself, but an owner is not required to avail itself of every protection the Act affords. The same is true for subcontractors. The Act provides a minimal level of protection in those cases where neither the owner nor the subcontractor takes advantage of the discretionary protections available.

On the last day possible, 90 days after it made its final delivery of materials in this case, Ready-Mix mailed its notice of mechanic's lien to the owner, then recorded its claim of lien. A subcontractor may give the owner written notice of its claim (and thereby protect itself against subsequent disbursements) any time after the subcontractor enters into its contract with the general contractor, but no later than 90 days after the subcontractor's completion of the contract. (Ill. Rev. Stat. 1989, ch. 82, par. 24.) Once the subcontractor's notice is timely given, the owner must retain "from any money due or to become due the contractor" an amount sufficient to pay the subcontractor. Payments made after the notice without retaining sufficient money to pay the subcontractor are illegal. (Ill. Rev. Stat. 1989, ch. 82, par. 27.) Still, even if the subcontractor never gives notice to the owner, it is the owner's duty, before making any payments, to require the general contractor to provide a written statement listing the subcontractors and amounts due or to become due each. (Ill. Rev. Stat. 1989, ch. 82, pars. 5, 21.) The owner must then ensure that the subcontractors listed are paid the amounts shown; the owner is protected against

subcontractors not listed or amounts understated unless those omissions are with the knowledge or collusion of the owner. Ill. Rev. Stat. 1989, ch. 82, par. 27.

Ready-Mix could have prevented any loss here by giving a subcontractor's notice to the owner before making any deliveries. Ready-Mix was not required to give that notice, however, and could still claim its rights under sections 5 and 21, relying on the general contractor to disclose the amounts due it. The owner perhaps could have prevented loss by demanding final lien waivers, but had no affirmative duty to do so. In the absence of prior notice by the subcontractor, the owner's only duty was the duty imposed by sections 5 and 21: to require a written statement by the contractor, and to ensure the amounts listed were paid. The owner complied with that duty here, except to the extent of $127.25. Both the owner and Ready-Mix could have done more, but it is Ready-Mix which is seeking relief, which is asking that the owner pay twice. The Act provides no justification for shifting the loss from Ready-Mix to the owner in this case.

The argument could be made that section 32 of the Act requires an owner to always insist on lien waivers. That section provides that no payments shall be regarded as rightfully made "if made by the owner without exercising and enforcing the rights and powers conferred upon him in sections 5, 21 and 22 of this act." (Ill. Rev. Stat. 1989, ch. 82, par. 32.) The problem with that argument is that sections 5 and 21 simply mention lien waivers, apparently in connection with work on an existing owner-occupied single-family residence (not the situation here), and do not give the owner any particular right or power to use them. The Act does not define lien waivers, or explain their effect. The term "final lien waiver" is not used in the Act. An owner might avoid problems by making the general contractor and subcontractors joint payees on the owner's payment checks, or by using some type of escrow, but those rights or powers again are not "conferred" by the Act. If section 32 were read to impose on owners a duty to require lien waivers every time a payment is made, the Act would no longer balance rights and duties between owners and subcontractors, but would place *all burdens* on owners who failed to obtain lien waivers. Section 24, dealing with subcontractors' notices, would become meaningless—a subcontractor would be protected irrespective of whether it sent its notice before the owner made payment. Compliance with sections 5 and 21 would likewise provide no protection for the owner.