No. 3-07-0402
consolidated with No. 3-07-0462

_____

Filed June 16, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| WEATHER-TITE, INC., an ILLINOIS CORPORATION, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit Will County, Illinois |
|     Plaintiff, | ) ) | |
|     v. | ) ) | |
| UNIVERSITY OF ST. FRANCIS, STONITSCH CONSTRUCTION, INC., QUAKER WINDOW PRODUCTS COMPANY, EXCEL ELECTRIC, INC., LAFORCE, INC., SCOTT KARLI d/b/a SK SALES, MIDWEST ARCHITECTURAL GLASS, INC., UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) | |
|     Defendants. | ) | |

_____) No. 06-CH-1131
                       )    06-CH-1135

| | | |
|---|---|---|
| EXCEL ELECTRIC, INC., an ILLINOIS CORPORATION, | ) ) ) | |
|     Counter-Plaintiff-Appellant, | ) ) ) | |
|     vs. | ) ) | |
| UNIVERSITY OF ST. FRANCIS, STONITSCH CONSTRUCTION, INC., WEATHER-TITE, INC., QUAKER WINDOW PRODUCTS COMPANY, LAFORCE, INC., SCOTT KARLI d/b/a SK SALES, MIDWEST ARCHITECTURAL GLASS, INC., UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
|     Counter-Defendants-Appellees. | ) ) | Bobbie Petrungaro Judge Presiding. |

_____

JUSTICE LYTTON delivered the Opinion of the court:

_____

Excel Electric, Inc. filed a complaint to foreclose a mechanic's lien against University of St. Francis. St. Francis filed a motion for summary judgment, and Excel filed a cross-motion for summary judgment. The trial court granted University's motion and denied Excel's motion. We reverse and remand.

BACKGROUND

In March 2005, St. Francis hired Stonitsch Construction, Inc. to be its general contractor on a project to renovate a residence hall. Stonitsch hired many subcontractors to complete the renovation project, including Excel Electric, Inc.. According to the contract between Stonitsch and Excel, Excel was to provide electrical labor, materials and services for the project. From May 2005 to November 2005, Excel provided the necessary labor, materials and services to Stonitsch.

On four occasions during the course of the renovation project, Stonitsch submitted documents to St. Francis entitled "Application and Certificate for Payments." In these documents, Stonitsch requested payment from St. Francis in the following amounts: (1) $123,703.20 on May 26, 2005, (2) $532,475.10 on June 16, 2005, (3) $1,204,333.10 on June 15, 2005, and (4) $1,081,999.69 on August 18, 2005. Each of the payment certificates listed Excel as the electrical subcontractor and showed the amount that it was due. St. Francis provided Stonitsch payments in the amounts requested in each "Application and Certificate for Payments." After St. Francis paid Stonitsch, Stonitsch paid Excel the amount it was due as set forth in each payment certificate.

2

Stonitsch completed its renovation work in November 2005. On December 6, 2005, Stonitsch issued its final "Application and Certificate for Payments" to University. According to that document, St. Francis owed Stonitsch $458,237.56, of which $130,948.48 was due Excel. St. Francis made its final payment of $458,237.56 on January 20, 2006. That amount was wire transferred into Stonitsch's account at Harris Bank. Upon receiving the payment, Harris Bank exercised its right of set off and applied the funds received to partially satisfy a debt Stonitsch owed Harris. Excel received no payment from Stonitsch with respect to the final payment certificate.

On February 22, 2006, Excel served a Notice and Claim for Mechanic's Lien on University, claiming it was owed $140,547.09 for its work on the renovation project. Other subcontractors, including Weather Tite, Inc., served St. Francis with notices and claims for mechanics' liens.

In May 2006, Weather Tite filed a complaint for foreclosure of its mechanic's lien. One month later, Excel filed a counter-complaint to foreclose its mechanic's lien. St. Francis filed a motion for summary judgment, arguing that Excel did not have an enforceable mechanic's lien. Excel filed a cross-motion for summary judgment, arguing that it had a valid and enforceable mechanic's lien against St. Francis in the amount of $130,948.48.

The trial court entered an order granting University's motion for summary judgment and denied Excel's cross-motion for summary judgment. In its order, the trial court relied on Luczak Bros., Inc. v. Generes, 116 Ill. App. 3d 286, 451 N.E.2d 1267 (1983),

3

which "seemed factually similar to this case." The trial court summarized that case as follows: "[T]he subcontractor was entitled to a lien only in the amount show to become due on the last statement for which payment was made and the subcontractor must look to the contractor for payment." (Emphasis by trial court), citing Luczak, 116 Ill. App. 3d at 303, 4512 N.E.2d at 1281. The trial court concluded that because St. Francis did not receive Excel's notice of lien and claim until after it made final payment to Stonitsch, Excel did not have a valid and enforceable mechanic's lien against St. Francis and must look for Stonitsch for payment.

### ANALYSIS

Excel argues that it is entitled to a lien of $130,948.48 because that amount was shown to be due Excel in the final payment certificate Stonitsch provided to St. Francis. St. Francis responds that Excel is not entitled to a lien because Excel did not serve its lien notice until after St. Francis made its final payment to Stonitsch and all work on the project was complete.

The purpose of the Mechanics Lien Act (Act), 770 ILCS 60/1 et seq. (West 2004), is to protect those who in good faith furnish material or labor for the construction of a building. State Bank of Lake Zurich v. Winnetka Bank, 245 Ill. App. 3d 984, 994, 614 N.E.2d 862, 869 (1993). The Act attempts to balance the rights and duties of owners, contractors and subcontractors. Alliance Steel, Inc. v. Piercy, 277 Ill. App. 3d 632, 635, 660 N.E.2d 1341, 1343 (1996).

Under section 5 of the Act, it is the owner's duty, before making any payments, to require the general contractor to provide

4

a sworn written statement listing the subcontractors and the amounts due or to become due to each one. 770 ILCS 60/5(a) (West 2004). If a subcontractor's name is omitted from the contractor's statement or the subcontractor is owed an amount different from what is provided in the statement, the subcontractor must give the owner written notice of its claim no later than 90 days after its completion of the contract. 770 ILCS 60/24(a) (West 2004).

When an owner is notified of a subcontractor's claim, he must retain from any money due the contractor an amount sufficient to pay the subcontractor. 770 ILCS 60/27 (West 2004); see Knickerbocker Ice Co. v. Halsey Bros. Co, 262 Ill. 241, 246, 104 N.E. 665 (1941). If an owner pays a contractor and does not retain sufficient funds to pay a subcontractor after receiving notice that a subcontractor is owed, such payment shall be considered illegal and made in violation of the subcontractor's rights. 770 ILCS 60/27 (West 2004).

An owner will not be required to pay a greater amount than the contract price "unless payment be made to the contractor or to his order, in violation of the rights and interests of the persons intended to be benefitted by this act." 770 ILCS 60/21(d) (West 2004). An owner who pays a contractor without withholding sufficient funds for the subcontractor runs the risk of being obligated to pay the subcontractor even if he already paid the contractor the full contract price. See Hall v. Harris, 242 Ill. App. 315, 318 (1926); see also Capital Plumbing & Heating Supply Co. v. Snyder, 2 Ill. App. 3d 660, 666, 275 N.E.2d 663, 668 (1971) (once an owner is put on notice that money is due a subcontractor,

5

he acts at his peril unless he retains sufficient funds to pay the subcontractor).

A payment to a contractor is not wrongful if it is made by an owner prior to receiving notice of a subcontractor's claim.  See Contractors' Ready-Mix, Inc. v. Earl Given Construction Co., Inc., 242 Ill. App. 3d 448, 458, 611 N.E.2d 529, 535 (1993). However, when an owner has notice of a subcontractor's claim, through the contractor's statement under section 5 or through the subcontractor's 90-day notice under section 24, and nevertheless makes payment to the contractor without retaining funds for the subcontractor, such payment is wrongful under the Act.  See Contractors' Ready-Mix, 242 Ill. App. 3d at 458, 611 N.E.2d at 535; Snyder, 2 Ill. App. 3d at 667, 275 N.E.2d at 668-69; Gilbert v. Croshaw, 178 Ill. App. 10, 12-13 (1913); Butler v. Gain, 128 Ill. 23, 26-27, 21 N.E. 350 (1889).  When an owner makes a wrongful payment, the subcontractor is entitled to a lien in the amount of the wrongful payment.  See Contractors' Ready Mix, 242 Ill. App. 3d at 458, 611 N.E.2d at 535.

In an attempt to balance the rights and duties of owners, contractors and subcontractors, the Act draws lines establishing who is entitled to relief when an owner and subcontractor are both bona fides. Under the Act, a bona fide owner is protected from having to pay out twice as long as he follows the terms of the Act. See 770 ILCS 60/21(d) (West 2004); see also Gilbert, 178 Ill. App. at 13 (an owner will be required to pay more than the original contract price only if he has not complied with the provisions of

6

the Act). However, if an owner does not abide by the provisions of the Act, "he acts at his peril." Capital Plumbing, 2 Ill. App. 3d at 666, 275 N.E.2d at 668. In other words, an innocent owner protects itself and a subcontractor by complying with the Act; but if an otherwise innocent owner does not follow the terms of the Act, the subcontractor is entitled to relief. See Contractors' Ready-Mix, 242 Ill. App. 3d at 458, 611 N.E.2d at 535; Snyder, 2 Ill. App. 3d at 667, 275 N.E.2d at 668-69; Gilbert, 178 Ill. App. at 12-13; Butler, 128 Ill. at 26-27, 21 N.E. 350.

Here, we agree with Excel that St. Francis was required to retain the amount it was due as set forth in Stonitsch's last payment certificate. Our analysis begins with the case of Contractors' Ready-Mix, 242 Ill. App.3d 448, 611 N.E.2d 529. In that case, First Midwest Bank contracted with Earl Given Construction Co. to erect a Wal-Mart. Given entered into a subcontract with Ready-Mix. In September and October 1990, Ready-Mix delivered materials to Given and did not receive payment in the amount of $77,102.77. After that, Given gave First Midwest a sworn statement showing that Ready-Mix was due $127.25. Given also served First Midwest with a document purporting to be a waiver of Given's lien for $280,800 worth of work that Given had completed. In November, First Midwest paid Given $280,800. In January 1991, Ready-Mix mailed its notice of lien to First Midwest.

The appellate court found that Ready-Mix was entitled to a lien in the amount of $127.25 because "except for the owner's failure to withhold $127.25 from the sum which it paid Given on November 2, 1990, the owner complied with the requirements of

7

section 5 of the Act when the owner obtained Given's section 5 affidavit on October 25, 1990, and then paid Given $280,800 on November 2, 1990." Contractors' Ready-Mix, 242 Ill. App. 3d at 454, 611 N.E.2d at 533. The court held that "Ready-Mix's section 24 notice to the owners did not render wrongful payments made by the owner to Given prior to the owner's receipt of that notice." 242 Ill. App. 3d at 456, 611 N.E.2d at 534. However, the court found that "[w]here, as here, the owner has made some wrongful payments, the subcontractor or supplier is entitled to a mechanic's lien to the extent of those payments." 242 Ill. App. 3d at 458, 611 N.E.2d at 535. The court found that "the owner wrongfully paid out the sum of $127.25 and Ready-Mix is entitled to a mechanic's lien but only to that extent." 242 Ill. App. 3d at 458, 611 N.E.2d at 535.

The facts in Ready-Mix are similar to those in the instant case. In both, the contractor's sworn statements showed that one or more subcontractors were owed money. Nevertheless, the owners paid the contractors the full amount requested and did not withhold any money for the subcontractor(s). According to the court in Ready-Mix, such a payment is wrongful and entitles the subcontractor to a lien in the amount of the wrongful payment. 242 Ill. App. 3d at 458, 611 N.E.2d at 535.

Stonitsch's final payment certificate requested payment from St. Francis in the amount $458,237.56, of which $130,948.48 was due Excel. St. Francis paid Stonitsch the entire amount it requested and did not withhold $130,948.48 for Excel's benefit. After making its final payment to Stonitsch, University received Excel's Notice

8

and Claim for Mechanic's Lien, showing that it was owed $140,547.09.

Because St. Francis did not receive Excel's section 24 notice until after it made payment to Stonitsch, that notice would have been ineffective; however, St. Francis did receive notice of Excel's claim in Stonitsch's final payment certificate, which showed that Excel was owed $130,948.48. Pursuant to that notice, St. Francis was obligated to withhold $130,948.48 from its final payment to Stonitsch. See 770 ILCS 60/27 (West 2004); Knickerbocker, 262 Ill. at 246, 104 N.E. 665; Contractors' Ready Mix, 242 Ill. App. 3d at 458, 611 N.E.2d at 535. Because St. Francis paid Stonitsch the full amount requested and did not retain any funds to pay Excel, St. Francis's payment was wrongful. See 770 ILCS 60/27 (West 2004); Contractors' Ready Mix, 242 Ill. App. 3d at 458, 611 N.E.2d at 535; Snyder, 2 Ill. App. 3d at 667, 275 N.E.2d at 668-69; Gilbert, 178 Ill. App. at12-13; Butler, 128 Ill. at 26-27, 21 N.E. 350.

Nevertheless, St. Francis argues that the cases of Luczak, 116 Ill. App. 3d 286, 451 N.E.2d 1267, and Knickerbocker Ice Co. v. Halsey Bros., Co., 262 Ill. 241, 104 N.E. 655 (1914), support the trial court's conclusion that Excel did not have a valid and enforceable mechanic's lien against St. Francis. We disagree.

The trial court relied on the court in Luczak, finding that "the subcontractor was entitled to a lien only in the amount shown to become due on the last statement for which payment was made * * *." (Emphasis added by trial court). However, the court in Luczak actually held that the subcontractors in that case were

9

"entitled to a lien only in the amount shown to be due on the last statement for which payment was made." Luczak, 116 Ill. App. 3d at 304, 451 N.E.2d at 1281. (Emphasis added). Thus, applying Luczak to this case, Excel is entitled to a lien in the amount of $130,948.48, the amount shown to be due Excel on the final payment certificate.

Nor does Knickerbocker support St. Francis' argument. In Knickerbocker, the contractor issued false sworn statements to the owner. According to the contractor's last statement, the subcontractor was owed $900. The subcontractor was actually owed $1,426.33 and filed a petition against the owner, claiming a lien in that amount. The trial court held that the subcontractor had a lien in the amount of $911, the remaining unpaid balance on the contract between the owner and the contractor. The appellate court and supreme court affirmed. The supreme court explained: "Having no knowledge of the falsity of the statements, the owner had the right to act upon them, and the subcontractor must look to the contractor for any balance due on its claim over and above the amount withheld by the owner pursuant to the sworn statements made." Knickerbocker, 262 Ill. At 245.

Like the courts in Ready-Mix and Luczak, the Knickerbocker court found that the subcontractor had a valid and enforceable lien against the owner pursuant to the contractor's sworn statement. However, Knickerbocker is distinguishable from this case in a significant way. In Knickerbocker, the owner properly withheld from the contractor the amount that the final sworn statement reflected was still due to the subcontractor. Thus, the owner in

10

Knickerbocker fulfilled all of his duties under the Act and, therefore, could not be required to pay more than the contract price.  See 770 ILCS 60/21(d).  Here, St. Francis had not properly withheld from Stonitsch the amount Excel was owed pursuant to the final payment certificate.  Thus, St. Francis' payment to Stonitsch was wrongful, and St. Francis could be required to pay more than the contract price.  See Hall, 242 Ill. App. at 318; Snyder, 2 Ill. App. 3d at 666, 275 N.E.2d at 668.

Excel is entitled to a mechanic's lien of $130,948.48, the amount shown to be due Excel in the final payment certificate that St. Francis wrongfully paid Stonitsch.  See Contractors' Ready Mix, 242 Ill. App. 3d at 458, 611 N.E.2d at 535; see also Luczak, 116 Ill. App. 3d at 304, 451 N.E.2d at 1281 (a subcontractor is entitled to a lien in the amount shown to be due on the last statement for which payment is made).  The trial court erred in granting St. Francis's motion for summary judgment and denying Excel's motion for summary judgment.

The judgment of the circuit court of Will County granting summary judgment to St. Francis and denying summary judgment to Excel is reversed.  We remand to the trial court to enter an order granting Excel's motion for summary judgment.

Reversed and remanded.

HOLDRIDGE and O'BRIEN, JJ., concurring.

11